UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANN MAYHALL, on behalf of her Minor Child, D.M., individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>AMAZON WEB SERVICES, INC. and AMAZON.COM, INC.,<br><br>    Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY DEMAND |

## CLASS ACTION COMPLAINT

Plaintiff, Ann Mayhall, on behalf of her Minor Child, D.M., individually and on behalf of all others similarly situated, for her Complaint against Defendants Amazon Web Services, Inc. ("AWS") and Amazon.com, Inc. ("Amazon"), states as follows:

## THE PARTIES

1.    Plaintiff Ann Mayhall is the guardian of Minor Child, D.M., and is a citizen of the State of Illinois residing in Madison County, Illinois.

2.    D.M., a minor child, is a sixteen (16) year old child and a citizen of the State of Illinois residing in Madison County, Illinois.

CLASS ACTION COMPLAINT - 1

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1      3.      Defendant AWS is a Delaware corporation with its principal place of business in

2   Seattle, Washington.

3      4.      Defendant Amazon is a Delaware corporation with its principal place of

4   business in Seattle, Washington.

5                           **JURISDICTION AND VENUE**

6
       5.      This Court has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C.
7
    § 1332(d).  Because Plaintiff and Defendants are citizens of different States, there is minimal
8
    diversity.  The total claims of Class Members exceed $5,000,000 exclusive of interest and
9
    costs.  There are at least 100 Class Members.
10

11     6.      This Court has personal jurisdiction over Defendants because they have their

12   principal places of business in Washington and are, therefore, citizens of Washington.

13
       7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants
14
    reside in this district and are residents of the State in which this district is located.
15

16                            **NATURE OF THE ACTION**

17     8.      This claim involves Illinois' Biometric Information Privacy Act, 740 ILCS 14/1

18   *et seq*. ("BIPA"), a law that regulates companies that possess, collect, obtain, use, store, profit

19   from, or disseminate, Illinois citizens' biometric data, such as fingerprints, scans of face

20   geometry, and voiceprints, and information derived therefrom.

21
       9.      AWS and Amazon provide cloud computing services to Take 2 Interactive
22
    Software, Inc. ("Take 2") and/or its wholly owned subsidiary 2K Games, Inc. ("2K Games"),
23
    which publish video games in the NBA 2K series.  The NBA 2K games are basketball
24
    simulation video games that have been released each year since NBA 2K6 in 2005.
25

26

CLASS ACTION COMPLAINT - 2

1          10.     Take 2/2K Games use AWS and Amazon cloud-computing services for, *inter*

2 *alia*, servers, computing, storage, and to provide the infrastructure to deliver its games to

3 internet-connected gaming platforms such as X-Box, PlayStation, Nintendo, and Personal

4 Computers.

5          11.     AWS utilizes various servers and other cloud-computing infrastructure owned

6 by Amazon.

7          12.     Beginning with the release of NBA 2K17 on September 20, 2016 and continuing

8 to the present, Take 2 and/or 2K Games have released annually a companion application (the

9 "App") for mobile devices that allows users to, among other things, redeem game codes, obtain

10 video game information and news, and customize their in-game characters.

11         13.     To further customize their characters, the App allows users to "SCAN YOUR

12 FACE" and upload it onto a player in the game.  The App's face scanning feature requires that

13 a user log in to their gaming platform account, then pose their face in thirteen different

14 directions while taking pictures with their mobile device in front of their face.

15         14.     The data collected from the App is compressed and uploaded to a Take 2 server.

16         15.     After the user scans his or her face using the App, s/he connects to the internet

17 by means of a gaming platform (e.g., X-box, PlayStation, Nintendo) and logs into his/her user

18 account to initiate the process for uploading his/her face onto a player in the game.

19         16.     When the user initiates the process to upload his/her face onto a player in the

20 game, the gaming platform makes the request to AWS and/or Amazon servers.  AWS and/or

21 Amazon then retrieves the face-scan data from the Take 2 server and converts it into a face

22 geometry of the user on the AWS and/or Amazon servers, using AWS and/or Amazon

23 computing power.  The face geometry, along with other information based on the face

Tousley Brain Stephens PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

geometry that can be used to identify the person, is thereafter transmitted through one or more AWS and/or Amazon servers to the user's gaming platform. The data is also stored by AWS and/or Amazon at each AWS/Amazon server location through which it is transmitted.

17.     The face geometry constitutes a "biometric identifier" regulated by BIPA.

18.     The data based on the face geometry that can be used to identify the user constitutes "biometric information" regulated by BIPA.

19.     AWS and/or Amazon possess, collect, capture, purchase, receive through trade, or otherwise obtain these biometric identifiers and/or biometric information, yet over the past five years, AWS and/or Amazon have violated Plaintiff and the Class Members' rights under BIPA on numerous occasions by, *inter alia*:

- not properly informing Plaintiff and Class Members in writing that AWS/Amazon was collecting or storing their biometric identifiers and/or biometric information as required by 740 ILCS 14/15(b)(1);

- not informing Plaintiff and Class Members in writing of the specific purpose and length of term for which her biometric identifiers and/or biometric information was being collected, stored, and used as required by 740 ILCS 14/15(b)(2);

- collecting, obtaining, using and/or storing biometric identifiers and/or biometric information without first obtaining the written release executed by Plaintiff and Class Members required by 740 ILCS 14/15(b)(3);

- not developing, making available, and/or complying with a written policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers and/or biometric information as required by 740 ILCS 14/15(a);

- selling, leasing, trading, or otherwise profiting from the biometric identifiers and/or biometric information of Plaintiff and Class Members in violation of 740 ILCS 14/15(c); and/or

- disclosing, redisclosing, or otherwise disseminating the biometric identifiers and/or biometric information of Plaintiff

CLASS ACTION COMPLAINT - 4

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    and Class Members, without satisfying the requirements of 740
     ILCS 14/15(d)(1)-(4).

2

3    20.    Defendants have also been unjustly enriched at the expense of Plaintiff and the

4    Class.

5    21.    Accordingly, Plaintiff seeks to represent a class of similarly situated individuals

6    to obtain an Order: (A) awarding Plaintiff and each Class Member statutory damages of $5,000

7    for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or, in the

8    alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740

9    ILCS 14/20(1); (B) disgorging the ill-gained profits of AWS and Amazon; (C) enjoining AWS

10   and Amazon from possessing, collecting, obtaining, storing, using, selling, leasing, trading, or

11   profiting from Plaintiff's and the Class Members' biometric identifiers and biometric

12   information until done so in compliance with BIPA; (D) awarding Plaintiff and the Class

13   Members reasonable attorneys' fees, costs, and other expenses pursuant to 740 ILCS 14/20(3);

14   (E) awarding Plaintiff and the Class Members pre-and post-judgment interest, as provided by

15   law; and (F) awarding such other and further relief as is just and appropriate.

16

17                                    **BACKGROUND**

18                       **Illinois' Biometric Information Privacy Act**

19   22.    The Illinois General Assembly enacted BIPA in 2008 to establish standards of

20   conduct for private entities that collect or possess biometric identifiers and biometric

21   information.  BIPA "vests in individuals and customers the right to control their biometric

22   information." *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 34 (Ill. 2019).

23   23.    The Illinois General Assembly noted that BIPA was carefully crafted to protect

24   biometric data because "unlike other unique identifiers that are used to access finances or other

25   sensitive information," one's own biometric identifiers cannot be changed; "[t]herefore, once

26

CLASS ACTION COMPLAINT - 5

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions."  740 ILCS 14/5(c).

24.     The legislative findings also acknowledge that "[t]he full ramifications of biometric technology are not fully known." *Id.* § 14/5(f).  Accordingly, the General Assembly found that "[t]he public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Id.* § 14/5(g).

25.     Courts have likewise explained that once biometric data has been collected and disseminated, there is no form of recourse to undo the threats of financial harm and the invasions to personal privacy and security available to a malicious actor.  An Illinois Appellate Court explained:

> A person cannot obtain new DNA or new fingerprints or new eyeballs for iris recognition, at least not easily or not at this time. Replacing a biometric identifier is not like replacing a lost key or a misplaced identification card or a stolen access code. The Act's goal is to prevent irretrievable harm from happening and to put in place a process and rules to reassure an otherwise skittish public.

*Sekura v. Krishna Schaumburg Tan, Inc.*, 2018 IL App (1st) 180175, ¶ 59, 115 N.E.3d 1080, 1093, *appeal denied*, 119 N.E.3d 1034 (Ill. 2019).

26.     The Seventh Circuit has also stated that biometric data is "meaningfully different" from other personal information, such as addresses, dates of birth, telephone numbers, and credit card and social security numbers, because of the "inherent sensitivity of biometric data," which is "immutable, and once compromised, [is] compromised forever—as the legislative findings in BIPA reflect." *Fox v. Dakkota Intergrated Sys., LLC*, 980 F.3d 1146, 1155 (7th Cir. 2020).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

27.     Furthermore, the biometric data of minors needs extra protection because "before minors come of age their immutable biometric or health-related data could be collected," causing permanent damage.[1]  Accordingly, in BIPA's consent regime, the General Assembly mandated that private entities obtain a written release executed by the subject's "legally authorized representative."  740 ILCS 14/15(b); *see also id.* § 15(d).

28.     "Biometric identifiers" covered by BIPA include retina or iris scans, fingerprints, voiceprints, and scans of hand or face geometry, none of which can be changed if compromised.  740 ILCS 14/10.

29.     "Biometric information" covered by BIPA includes "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual."  *Id.*

30.     BIPA makes it unlawful for any private entity to, *inter alia*, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information unless it first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ."  740 ILCS 14/15(b).

---

[1] *See* Stacy-Ann Elvy, *Commodifying Consumer Data in the Era of the Internet of Things*, 59 B.C. L. Rev. 423, 447 (2018); *see also Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 2012 IL 112479, ¶ 36 (Ill. 2012) ("'[T]the welfare and protection of minors has always been considered one of the State's most fundamental interests.' . . . 'The performance of this duty is justly regarded as one of the most important of governmental functions, and all constitutional limitations must be so understood and construed as not to interfere with its proper and legitimate exercise.'") (*quoting Am. Fed. of State, Cnty. & Mun. Emp. v. Dep't of Central Mgmt. Servs.*, 173 Ill. 2d 299, 311 (1996); *Cnty. of McLean v. Humphreys*, 104 Ill. 378, 383 (1882); *People v. Huddleston*, 212 Ill. 2d 107, 133 (2004)).

CLASS ACTION COMPLAINT - 7

31.     Furthermore, BIPA requires that any "private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

32.     BIPA also provides that "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c).

33.     Finally, BIPA makes it unlawful for any private entity in possession of a biometric identifier to "disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless: (1) the subject of the biometric identifier or biometric information . . . consents to the disclosure or redisclosure; (2) the disclosure or redisclosure completes a financial transaction requested or authorized by the subject of the biometric identifier . . . ; (3) the disclosure or redisclosure is required by State or federal law or municipal ordinance; or (4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction." 740 ILCS 14/15(d).

34.     BIPA provides for a private right of action: "Any person aggrieved by a violation of this Act shall have a right of action in a State circuit court or as a supplemental claim in federal district court against an offending party." 740 ILCS 14/20.

35.     The Illinois Supreme Court has explained that a person whose biometric identifiers are the subject of violations of section 15 of BIPA is "aggrieved" by the entity's failure to comply with BIPA and is "entitled to seek recovery" under Section 14/20.

CLASS ACTION COMPLAINT - 8

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 33 ("[W]hen a private entity fails to comply with one of section 15's requirements, that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach. Consistent with the authority cited above, such a person or customer would clearly be 'aggrieved' within the meaning of section 20 of the Act (*id.* § 20) and entitled to seek recovery under that provision. No additional consequences need be pleaded or proved. The violation, in itself, is sufficient to support the individual's or customer's statutory cause of action.").

36.     Under BIPA, "[a] prevailing party may recover ***for each violation***: (1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater; (2) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater; (3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; and (4) other relief, including an injunction, as the State or federal court may deem appropriate." *Id.* (emphasis added).

37.     Each part of section 15 described above "imposes various duties upon which an aggrieved person may bring an action under section 20. Though all relate to protecting biometric data, each duty is separate and distinct. A private entity could violate one of the duties while adhering to the others, and an aggrieved person would have a cause of action for violation of that duty. Moreover, as section 20 provides that a 'prevailing party may recover for each violation' (740 ILCS 14/20 (West 2018)), a plaintiff who alleges and eventually proves violation of multiple duties could collect multiple recoveries of liquidated damages. *Id.* § 20(1), (2)." *Tims v. Black Horse Carriers, Inc.*, 2021 IL App (1st) 200563, ¶ 30.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

38.     Moreover, under BIPA, each instance of obtaining or disseminating a person's biometric data without consent constitutes a separate violation for which recovery can be had. *See Cothron v. White Castle Sys., Inc.*, 477 F. Supp. 3d 723, 732–34 (N.D. Ill. 2020) ("[The statutory] text is unambiguous and therefore dispositive.  A party violates Section 15(b) when it collects, captures, or otherwise obtains a person's biometric information without prior informed consent.  This is true the first time an entity scans a fingerprint or otherwise collects biometric information, but it is no less true with each subsequent scan or collection. . . . [T]he Court is bound by the clear text of the statute . . . .  [I]t is not the role of a court—particularly a federal court—to rewrite a state statute to avoid a construction that may penalize violations severely. . . . In sum, the Court concludes that [the plaintiff] has alleged multiple timely violations of both Section 15(b) and Section 15(d).  According to BIPA Section 20, she can recover 'for each violation.'  740 ILCS 14/20.").

## **Cloud-Computing and AWS Services**

39.     Cloud computing is on-demand delivery of technology services, such as computing power, storage, networking, and databases, over the internet.

40.     AWS provides cloud-computing services to millions of customers across the world.

41.     AWS' services include infrastructure technologies, like computing, storage, databases, and networking, as well as machine learning and analytics.  AWS' services utilize AWS' and Amazon's hardware, software and global infrastructure.  Thus, instead of owning and maintaining physical data centers, servers, or computing power, companies can pay AWS to provide these services.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

**Latency and Edge Computing**

42.      Latency is the measurement of how long it takes data to travel from its point of origin to its destination.[2]

43.      A key factor in determining latency is distance.[3]

44.      To decrease latency and improve performance, many companies, including AWS and Amazon, create "edge computing" as part of their network architecture.

45.      Edge computing relocates key data processing functions from the center of a network to the "edge," that is, closer to where data is gathered and delivered to end-users.

46.      Thus, edge computing architecture helps reduce latency by physically locating key processing tasks closer to end users, thereby delivering faster and more responsive services.

**AWS' CloudFront and Edge Locations**

47.      AWS and/or Amazon provides a service called Amazon CloudFront ("CloudFront"), which speeds up distribution of content over the internet using an edge computing architecture.

48.      CloudFront stores and delivers content through AWS's and/or Amazon's worldwide network of data centers called Edge Locations and Regional Edge Caches.

---

[2] Kaylie Gyarmathy, *How to Reduce Latency with Edge Computing and Network Optimization*, VXCHNGE (Oct. 4, 2019), https://www.vxchnge.com/blog/how-data-center-reduces-latency [https://archive.md/ExCZO].

[3] *Id.*

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

49.     CloudFront Edge Locations are connected to the Regional Edge Caches "through the AWS network backbone—fully redundant, multiple 100GbE [Gigabit Ethernet] parallel fiber that circles the globe and links with tens of thousands of networks . . . ."[4]

50.     "To deliver content to end users with lower latency, Amazon CloudFront uses a global network of 225+ Points of Presence (215+ Edge locations and 13 regional mid-tier caches) in 90 cities across 47 countries."[5]

51.     Six of these Edge Locations are currently located in Chicago, Illinois.

52.     When a user requests content, the request is routed to the closest Edge Location that provides the lowest latency, so that content is delivered with the best possible performance.

53.     If the content is already stored in the Edge Location with the lowest latency, CloudFront delivers it to the user immediately.

54.     If the content is not in that Edge Location, CloudFront attempts to retrieve the content from a Regional Edge Cache if it is stored there.  If the content is in the Regional Edge Cache, it is delivered to the Edge Location, and from there, sent to the end user.

55.     If the content is not stored in the Regional Edge Cache, CloudFront requests the content from the Origin Server where it is stored.  The Origin Server, which may or may not be owned by AWS/Amazon, sends the content to the AWS Regional Edge Cache, which sends the content to the AWS Edge Location.  CloudFront then delivers the content to the end-user from the Edge Location.

---

[4] Amazon CloudFront Key Features, https://aws.amazon.com/cloudfront/features/ (last visited Oct. 10, 2021) [https://archive.md/h2hCx].

[5] *Id.*

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1

56.     This process is depicted as follows:

2

**Figure 1: Content already stored at AWS/Amazon Edge Location:**



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

**Figure 2: Content already stored at AWS/Amazon Regional Edge Cache:**



**Figure 3: Content not currently stored at AWS/Amazon Edge Location or AWS/Amazon Regional Edge Cache:**



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

57.     During this process, the content is also stored in each Regional Edge Cache and/or Edge Location to/from which it is delivered.

58.     The purpose of storing the content in the Edge Location and/or Regional Edge Cache is to reduce the latency for the next time the user requests the content.

**AWS and Amazon Infrastructure**

59.     The servers at the AWS Edge Locations and AWS Regional Edge Caches are hosted by Amazon, which also owns the CloudFront IP addresses.

60.     Furthermore, Amazon owns, leases, operates and/or controls the data centers used by AWS.  For instance, in Amazon's most recent 10-K, Amazon stated that, as of December 31, 2020, it operated 294,138 square feet of property in North American for fulfillment, data centers, and other operations (285,677 sq. feet leased and 8,461 sq. feet owned by Amazon).[6]  Of this, AWS leased 10,599 sq. feet and owned 7,465 sq. feet.

61.     Amazon's 10-K also explained that it has "shared facilities" which are "facilities that hold our technology infrastructure."[7]

62.     Amazon further explained that it "leverage[s] a shared infrastructure that supports both our internal technology requirements and external sales to AWS customers."[8]

63.     Amazon stated that its "[i]nfrastructure costs include servers, networking equipment, and data center related depreciation and amortization, rent, utilities, and other expenses necessary to support AWS and other Amazon businesses.  Collectively, these costs

---

[6] Amazon 2020 10-K, p. 16 Item 2 (Feb. 2, 2021), *available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/1018724/000101872421000004/amzn-20201231.htm [https://archive.md/wWgQB].

[7] *Id.* at 16, Item 2, n.1.

[8] *Id.* at 27

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

reflect the investment [they] make in order to offer a wide variety of products and services to our customers."[9]

64.     AWS and Amazon have hundreds of employees at their office in Chicago, who are focused on its web services.  In 2019, Amazon added 70,000 square feet to this location and nearly doubled the number of employees at this office.[10]  Many of these employees perform work related to what AWS/Amazon calls "computer vision," which "allows machines to identify people, places, and things in images with accuracy at or above human levels with much greater speed and efficiency."[11]  These employees also include engineers that maintain edge servers and programmers that create and monitor software for these servers.  AWS/Amazon also develops "computer vision" applications that are marketed to third parties.[12] AWS/Amazon performs marketing and sales for computer vision and facial modeling software and services out of their Chicago, Illinois office.

**AWS/Amazon and Gaming**

65.     AWS provides video game companies, *inter alia*, server access, storage, infrastructure, and computing power for online gaming that is cheaper and more reliable than individually-owned servers and infrastructure.

66.     To provide such services, AWS utilizes the extensive cloud-computing infrastructure of AWS and Amazon.

---

[9] *Id.* at 28.

[10] Lauren Zumbach, *Amazon's Chicago Loop office is doubling its head count, adding 400 workers*, Chicago Tribune (Sept. 16, 2019), https://www.chicagotribune.com/business/ct-biz-amazon-chicago-office-expansion-20190916-2g4gjzjg6jh2ld4mkf6giepzge-story.html [https://archive.md/LQf4F].

[11] What is Computer Vision?, https://aws.amazon.com/computer-vision/ (last visited Oct. 10, 2021) [https://archive.md/0KfiJ].

[12] *Id.*

CLASS ACTION COMPLAINT - 16

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

67.     According to AWS, "video game makers are using the cloud to deliver online games to millions of players around the world."[13]

68.     Currently, "90% of the world's biggest public game companies are using AWS."[14]

69.     Latency is important for the online gaming user experience because it reflects the amount of time between a user giving a command on a controller or keyboard and the user's player moving on his respective screen.  High latency, sometimes called lag, may make it difficult or even impossible for a user to play or compete in an online game.  For this reason, Amazon and AWS have gone to great lengths to create a low latency gaming infrastructure.

70.     AWS'/Amazon's Edge Locations are important for online-based gaming because they help reduce latency by providing servers in edge data centers closer to where gamers are physically located.  If players in a particular region are logged into servers that can be reached with minimal latency, they will have a better experience than if they are logged into servers on the other side of the country with higher latency.

71.     When playing an online game that utilizes AWS/Amazon infrastructure, it appears as though the gaming platform is transmitting images to the user's television.  In fact, users communicate with AWS/Amazon through the gaming platform and controllers, and AWS and/or Amazon stores, retrieves, relocates, and transmits the data to the gaming platform, which then delivers the images to the television or screen.

72.     During online game play, there is constant and continuous exchange of information between the Illinois user and the Edge Location (and Regional Edge Cache and

---

[13] What is Cloud Computing?, https://aws.amazon.com/what-is-cloud-computing/ (last visited Oct. 10, 2021) [https://archive.md/nXOuh].

[14] https://aws.amazon.com/gametech/ [https://archive.ph/uDonk].

CLASS ACTION COMPLAINT - 17

Origin Server locations as needed). The user sends numerous commands per minute with his/her fingers using the gaming platform controller, and each command is initially sent to the Edge Location. Any responsive data not stored in the Edge Location is obtained from other locations, and sent to the Edge Location, which then sends it back to the gaming platform.

73.     Upon information and belief, Illinois users communicate directly with AWS/Amazon by means of their gaming platform controller in Illinois, the commands from their gaming platform are sent to the Edge Location in Chicago, Illinois, and AWS/Amazon responds to these commands/request by providing information to the gaming platform and ultimately a video screen in Illinois via that Chicago Edge Location.

## **AWS/Amazon is Subject to the Increasing Risk of Cyberattacks**

74.     Cyberattacks on organizations world-wide are up 40% this year compared with the first 10 months of 2020.[15]

75.     In 2015, a videogame streaming platform owned by Amazon called Twitch Interactive ("Twitch") announced that user information, including passwords, email addresses, user names, home addresses, phone numbers, and dates of birth of some users may have been accessed without authorization.[16]

76.     On October 6, 2021, Twitch suffered another data breach, followed by a leak of Twitch source code, internal security tools, and information about payouts made to Twitch users.[17]

---

[15] David Uberti and Sarah E. Needleman, *Twitch Hack Reveals How Much Revenue the Platform's Biggest Streamers Make*, Wall Street Journal (Oct. 6, 2021), https://www.wsj.com/articles/twitch-suffers-data-breach-divulging-how-much-revenue-its-biggest-streamers-make-11633536167 [https://archive.md/txDxI].

[16] *Id.*

[17] *Id.*

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

**NBA 2K Games and AWS/Amazon**

77.     Take 2 and/or 2K Games publishes video games in the NBA 2K series, which is a series of basketball simulation video games that have been published and released since NBA 2K6 in 2005.

78.     The premise of each game in the NBA 2K series is to emulate the sport of basketball, more specifically, the National Basketball Association.

79.     Take 2 and/or 2K Games released the following versions of NBA 2K (collectively, the "NBA 2K Games"):

        a.     NBA 2K17, released on September 20, 2016;

        b.     NBA 2K18, released on September 19, 2017;

        c.     NBA 2K19, released on September 11, 2018;

        d.     NBA 2K20, released on September 6, 2019;

        e.     NBA 2K21, released on September 4, 2020; and

        f.     NBA 2K22, released on September 10, 2021.

80.     Users of the NBA 2K Games can play as various NBA players, or can create custom players.

81.     NBA 2K Games have been released for multiple gaming platforms, the latest of which include X-Box Series X/S consoles, PlayStation 5, the Nintendo Switch, and Personal Computers.[18]

82.     The user has a gamer ID assigned to each gaming platform's account, and that gaming platform gamer ID becomes associated with the user's gameplay and choices in each NBA 2K Game on that platform.

---

[18] In Personal Computers, NBA2K21 is available from Steam, a video game digital distribution service.

CLASS ACTION COMPLAINT - 19

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

83.     AWS and Amazon provide cloud computing services to Take 2 and/or 2K Games for the NBA 2K Games.

84.     Take 2 and/or 2K Games use AWS/Amazon cloud-computing for, *inter alia*, servers, computing, storage, and to provide the infrastructure to deliver its games to internet-connected gaming platforms.

85.     AWS and Amazon provide cloud-computing for the NBA 2K Games for the following platforms: X-Box, PlayStation, Nintendo Switch and Personal Computers of users who play the game on Steam (collectively the "Gaming Platforms").

## NBA 2K Face Scanning App

86.     Beginning with the release of NBA 2K17 on September 20, 2016 and continuing to the present, Take 2 and/or 2K Games has released annually the App, a companion application for mobile devices that allows users to, among other things, redeem game codes, obtain video game information and news, and customize their in-game characters.

87.     The App for each year is named MyNBA2K22, MyNBA2K21, MyNBA2K20, MyNBA2K19, MyNBA2K18 and MyNBA2K17, each of which corresponds to the NBA 2K Game of the same year.

88.     To further customize their characters, the App allows users to "SCAN YOUR FACE" and upload it onto a custom player in the game.

89.     The MyNBA21 app in the Apple App Store describes this feature as follows: "Scan yourself into NBA 2K21 on Xbox One and PS4 using your mobile device."

90.     2K Games publishes each App in both the Apple and Google app stores.[19]

---

[19] *See* https://apps.apple.com/us/app/mynba2k21/id1519321527 [https://archive.ph/w4KEe]; https://play.google.com/store/apps/details?id=com.catdaddy.mynba2k21&hl=en_US&gl=US [https://archive.ph/KV4RB].

CLASS ACTION COMPLAINT - 20

91.     On both the Android and iOS operating systems, the App has a 4+ age rating, that is, the publisher represents this application is appropriate for children aged 4 and above.

92.     When an app has a 4+ age rating in the Apple App Store and Google Play Stores, app distributors place few restrictions for downloads by minor children.

### Scanning a Face into the App

93.     To access the "SCAN YOUR FACE" feature after the App is downloaded, the user must select which type of Gaming Platform he/she will be using (e.g. X-Box, PlayStation, Nintendo, Personal Computer), then enter his/her user account for that particular console.

94.     Once logged-in to the account associated with a specific Gaming Platform, the App asks the user to pose his/her face in 14 different directions for the camera to photograph.

95.     As shown in the following screenshot from the NBA 2K21 App, the user is asked to slowly turn his/her head left and right up to 30 degrees:



CLASS ACTION COMPLAINT - 21

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

96.     Sample screenshots from the face scan procedure are shown below:[20]





**Creating the Player from the Face Scans**

97.     After all the photographs are taken, they are uploaded to Take 2 and/or 2K Games' servers.

98.     Next, the user must turn on the Gaming Platform, connect to the internet, and log in to his/her user account to initiate the process for uploading his face onto a player in the game.

99.     Once logged in to his account on the Gaming Platform, the user chooses to build his/her player using the "Head Scan Data."  For example, once the user reaches the following

---

[20] These screenshots and, unless otherwise indicated, the screenshots in the next section come from: kisforkev, How to Get the Best Face Scan in NBA 2K21 (PS4 & XBOX One), https://www.youtube.com/watch?app=desktop&v=-_7V5FXq5HQ (last visited Oct. 10, 2021) [https://archive.ph/2X27K].  Although Plaintiff includes screenshots from the NBA2K21 game and MyNBA2K21 app, these allegations apply to all relevant future and prior versions of these games and Apps.

CLASS ACTION COMPLAINT - 22

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1   screen, s/he presses "X" on PlayStation ("A" on X-Box) to direct the computer to begin

2   building the player using the scanned head data:



100.   When the user presses the button on the game controller, the face construction

from the scanned data begins, as shown in the following screenshots:





CLASS ACTION COMPLAINT - 23

101.   Once the process is complete, a player with the user's face is created, and the following screen appears showing the user's face geometry below the words FACE SCAN: [21]



[21] How to Face Scan in NBA 2K21 Tutorial!!!, https://www.youtube.com/watch?v=A3-rFnSqfHg (last visited Oct. 10, 2021) [https://archive.ph/VmGYx].

CLASS ACTION COMPLAINT - 24

102.    Once the face has been created, the user can also customize or edit features, such as the skin, facial hair, ears, eyes, eyebrows, skull, and hair.  Each of these edit points appears as a point on the face geometry image behind the constructed face, and the face can be moved and viewed from different angles, as in the following example screenshots:





TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1
2
3
4
5
6
7
8
9
10



11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26



CLASS ACTION COMPLAINT - 26

1
2
3
4
5
6
7
8
9
10
11
12



103.     Once the user is done editing the face, he/she selects "DONE" and the face is uploaded to the AWS/Amazon cloud:



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

**Behind the Scenes, AWS/Amazon Obtains, Possesses, Transmits, and Stores Biometric Identifiers and/or Biometric Information from Users of the NBA 2K Games and Apps**

104.    After the user photographs his/her face with the App as described above, the App compresses and uploads the data to a Take 2 server. *See infra*, ¶ 111, Figure 4 at 1.

105.    When the user logs into the platform and initiates the process to insert his face onto a player in the game, the Gaming Platform makes the request to AWS and/or Amazon servers. *Id.* at 2.  At this point, AWS and/or Amazon retrieves the face-scan data from the Take 2 server. *Id.* at 3.

106.    Within AWS' and/or Amazon's servers, AWS and/or Amazon computing power is utilized to collect facial feature vectors from the face-scan data, which vectors are used to construct a 3D face geometry of the user (the "Face Geometry").  In other words, following the user's request from the Gaming Platform in Illinois, AWS and/or Amazon extracts, collects, captures, and/or obtains the Face Geometry from the data submitted by the user. *Id.* at 4.

107.    Once the Face Geometry is created, AWS and/or Amazon transmits the Face Geometry via CloudFront through the AWS/Amazon Regional Edge Cache and local edge Location system described above and delivers it to the user's Gaming Platform. *Id.* at 5.

108.    AWS and/or Amazon stores the Face Geometry at each Regional Edge Cache and each Edge Location through which it is transmitted.

109.    The Face Geometry is also associated with the user's Gaming Platform account, which identifies the user.  AWS and/or Amazon obtains, stores, and transmits this and other information based on the Face Geometry used to identify the individual.

110.    AWS and/or Amazon stores the data based on the Face Geometry used to identify individuals at each Regional Edge Cache and each Edge Location through which it is transmitted.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

111.    The Face Geometry creation, delivery, and storage process is depicted as follows:

**Figure 4: The Face Geometry Creation, Delivery & Storage process**



112.    Neither AWS nor Amazon discloses how long the Face Geometry or associated data remains stored at the Edge Location or the Regional Edge Cache.

113.    Once the face is created, the user must be connected to the internet to play an NBA 2K Game using the customized player with the scanned face.  This in-game experience using the Face Geometry for the customized player also occurs on AWS' and/or Amazon's servers, requiring the Face Geometry and associated data to be further transmitted and stored by AWS/Amazon each time the user plays the game with the custom player.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

114.    The custom player with the Face Geometry is not stored locally on the Gaming Platform's hard drive; rather, it's stored in the platform's random-access memory (RAM) during gameplay.

115.    Once gameplay ends, the custom player and previously created Face Geometry are stored on the AWS/Amazon servers and subsequently delivered to the Gaming Platform via CloudFront.

116.    This means that if the user ends the game, restarts the Gaming Platform, or returns to the Gaming Platform after turning it off, s/he must have the previously created Face Geometry and/or other associated data delivered from AWS/Amazon each time he wants to play the NBA 2K Game using the previously created face.

117.    Thus, the process of retrieving the Face Geometry (and any associated data) is repeated each time the user plays using his/her custom player: the user's request for the custom player (which requires the Face Geometry) is routed to the CloudFront Edge Location nearest to the user.  If the requested data is already in the CloudFront Edge Location where the request is initially sent, the Face Geometry and associated data is sent from that Edge Location to the user's Gaming Platform.  If the Face Geometry and associated data is not already stored in the Edge Location, the Edge Location either obtains the Face Geometry and associated data from the Regional Edge Cache location, or from the Original Server, and The Edge Location forwards the Face Geometry and associated data to the user's Platform, thereafter storing the data in the Edge Locations and any Regional Edge Cache through which it passed.  *See supra*, ¶ 56.

118.    Upon information and belief, Gaming Platforms in Illinois utilize the Chicago, Illinois Edge Locations for NBA 2K Games.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

119.    Thus, requests related to the Face Geometry made by users in Illinois were routed to or through the Edge Locations in Chicago, Illinois.

120.    Likewise, the Face Geometry and associated identifying data was obtained by, stored in, and transmitted from the Edge Locations in Chicago, Illinois.

121.    The Face Geometry constitutes a "biometric identifier" pursuant to 740 ILCS 14/10.

122.    Any information that is based on the Face Geometry used to identify the individual constitutes "biometric information" pursuant to 740 ILCS 14/10.

**Defendants' Intentional or Reckless Violations of BIPA**

123.    BIPA has been the law in Illinois since 2008.

124.    Defendants are familiar with BIPA, as they purport to make BIPA disclosures on their websites related to other of their products and services.  For example, AWS's current terms of service include a BIPA § 15(a) retention/destruction policy; however, the policy is limited only to callers using Amazon Connect Voice ID in Illinois whose biometric identifiers or biometric information is collected by AWS from companies using AWS as a service provider for voice verification services.  This retention/destruction policy is inapplicable to Face Geometries collected in relation to NBA 2K Games.  AWS has no similar publicly-disclosed policy for biometric data that is in its possession from its numerous gaming-company clients.

125.    Defendants are also facing lawsuits alleging BIPA violations relating to other of their products and services.

CLASS ACTION COMPLAINT - 31

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

126.    Additionally, Amazon and AWS knew that they were collecting biometric data from Illinois citizens, they knew that their collection of biometric data violated Illinois law, and they knew that the biometric data they collected included the biometric data of children.

127.    Amazon and AWS work closely together to provide services for NBA 2K games.

128.    Amazon hired a number of key executives, directors, and managers directly from 2K Games and Take 2, including but not limited to:

- Christopher Hartmann, who was the co-founder of 2K Games and the former president of Take 2.[22]  He is now a vice president of Amazon Game Studios (also called Amazon Games), a sub-division of Amazon.

- Sarah Anderson, who was the Senior Vice President of Marketing for 2K Games.  She is now the head of marketing for Amazon Games.

- Ryan Jones, who was Vice President of Communications at 2K Games. He is now Head of Public Relations at Amazon Games.

129.    These former 2K Games and Take 2 officers, directors, and managers understood how the features of NBA 2K Games, the top gaming franchise at 2K Games, worked, and understood further that the NBA 2K Games and App involved the collection, possession, and distribution of biometric identifiers and biometric information.

130.    These individuals also were familiar with BIPA, as 2K Games and Take 2 had faced lawsuits for alleged BIPA violations during their time as officers, directors, and managers.

131.    These individuals also knew that children made up a significant portion of the NBA 2K user base, and that children were frequently utilizing the face scan feature.

---

[22] Liz Lanier, *Founder of 2K Games Christoph Hartmann New VP of Amazon Games*, Variety (Aug. 7, 2018), https://variety.com/2018/gaming/news/christoph-hartmann-moves-amazon-games-1202898143/ [https://archive.ph/ONZP1].

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

132.     AWS/Amazon knew which users were in Illinois because that information is contained in the IP addresses of the users, and AWS/Amazon had the ability to restrict features that violate local law based upon the geography of the user.

133.     Nonetheless, AWS and Amazon, intentionally or recklessly, repeatedly violated BIPA as set forth herein.

## Plaintiff's Experience

134.     Plaintiff D.M. is a minor domiciled in Illinois.

135.     In September 2020, D.M. purchased an NBA 2K Game, specifically NBA 2K21, for his Xbox One Gaming Platform.

136.     D.M. subsequently downloaded the corresponding App, MyNBA2K21 without parental knowledge or consent.

137.     In early 2021, D.M., without parental knowledge or consent, used the face scan feature of the App to take several photos of his face.

138.     To take the face scans using the App, D.M. had to enter his account information, including his username and password, for his Xbox One account into the App.

139.     Upon information and belief, after D.M. scanned his face into the App, the App compressed and uploaded the face-scan data to a Take 2 server.

140.     Subsequently, D.M. logged into his Xbox One account, without parental knowledge or consent, to initiate the process to insert his face onto a player in the game.

141.     As outlined above, when D.M. pressed the button on the controller to initiate the process of creating a custom player with his face, his Xbox One made a request to AWS and/or Amazon servers, which caused those servers to retrieve the face-scan data from the Take 2 server.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

142.    Once AWS and/or Amazon obtained the face-scan data, it used AWS and/or Amazon computing power and software to collect facial feature vectors from D.M.'s face-scan data, which vectors were used to construct a 3D face geometry of D.M. ("D.M.'s Face Geometry").

143.    D.M.'s Face Geometry constitutes a "biometric identifier" pursuant to 740 ILCS 14/10.

144.    Once D.M.'s Face Geometry was created, AWS and/or Amazon transmitted it via CloudFront through the AWS/Amazon Regional Edge Cache/Edge Location system described above and delivered it to D.M.'s Xbox One at his home in Illinois.

145.    AWS and/or Amazon stored D.M.'s Face Geometry at each Regional Edge Cache and each Edge Location through which it passed.

146.    Any information based on D.M.'s Face Geometry used to identify D.M. constitutes "biometric information" pursuant to 740 ILCS 14/10.

147.    During the process of uploading D.M.'s Face Geometry and/or playing the game with D.M.'s player, AWS and/or Amazon also obtained and transmitted information based on D.M.'s Face Geometry used to identify D.M. ("D.M.'s Biometric Information").

148.    AWS and/or Amazon stored D.M.'s Biometric Information at each Regional Edge Cache and each Edge Location through which it passed.

149.    D.M. played NBA 2K21 using his customized player with his scanned face on multiple occasion throughout 2021.

150.    As set forth above, every time D.M. played a game with his scanned-face player, or modified his custom player, AWS and/or Amazon obtained, delivered, and stored D.M.'s Face Geometry and/or D.M.'s Biometric Information.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

151.    Requests related to D.M.'s Face Geometry were routed to or through the Edge Locations in Chicago, Illinois.

152.    D.M.'s Face Geometry and D.M.'s Biometric Information was obtained by, stored in, and transmitted from the Edge Locations in Chicago, Illinois.

153.    AWS' and/or Amazon's failures to comply with BIPA as set forth herein violated Plaintiff and the Class Members' privacy rights, and the harm to Plaintiff and the Class occurred in Illinois and is ongoing for these Illinois residents.  Moreover, the required BIPA disclosures and permissions would have been obtained and executed in Illinois.

## CLASS ALLEGATIONS

154.    Plaintiff brings this action on behalf of himself and all others similarly situated, as a representative of the following class (the "Class"):

> All Illinois residents who: (a) scanned their face into the App; and (b) imported their face into an NBA2K Game during the Class Period using a Gaming Platform located in Illinois.

155.    Plaintiff brings this action on behalf of himself and all others similarly situated, as a representative of the following subclass (the "Subclass"):

> All Illinois residents who, while under the age of 18: (a) scanned their face into the App; and (b) imported their face into an NBA2K Game during the Class Period using a Gaming Platform located in Illinois.[23]

156.    Excluded from the Class are any employees of Defendants, as well as the officers, directors, affiliates, legal representatives, predecessors, successors, and assigns of Defendants. Also excluded are the judges, court personnel, and jury in this case, and any members of their immediate families.

---

[23] Unless otherwise indicated, the Class and Subclass are collectively referred to as the Class.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

157.    Plaintiff reserves the right to amend or modify the Class definitions with greater specificity or division into subclasses after having had an opportunity to conduct discovery.

158.    The Class Period is that period within the statute of limitations for this action and extending until a Class is certified herein.

159.    The Class is certifiable under Fed. R. Civ. P. 23.

160.    **Numerosity**.  The members of the Class are so numerous that joinder of all members is impractical. The approximate number of Class members can be ascertained from Defendants' records or the records of third-parties.

161.    **Typicality.**  Plaintiff's claims are typical of the claims of the Class Members. Plaintiff and all Class Members have had their rights under BIPA violated based on the failures of AWS and/or Amazon to comply with the provisions of BIPA.

162.    **Commonality and Predominance.** There are questions of law and fact common to the Class, which predominate over any questions affecting individual members of the Class. These common questions of law and fact include, without limitation:

    a.    Whether AWS and/or Amazon are in possession of biometric identifiers and/or biometric information;

    b.    Whether AWS and/or Amazon developed, made available to the public, and complied with a retention and destruction policy in compliance with 740 ILCS 14/15(a);

    c.    Whether AWS and/or Amazon collected, captured, purchased, received through trade, or otherwise obtained Plaintiff's and the Class Members' biometric identifiers and/or biometric information;

    d.    Whether AWS and/or Amazon informed Plaintiff and the Class Members in writing that it was collecting their biometric identifiers and/or biometric information in compliance with 740 ILCS 14/15(b)(1);

    e.    Whether AWS and/or Amazon informed Plaintiff and the Class Members in writing of the specific purpose and length of term for which

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

it was collecting, storing, and/or using their biometric identifiers and/or biometric information in compliance with 740 ILCS 14/15(b)(2);

    f.    Whether AWS and/or Amazon received written releases from Plaintiff and the Class Members prior to collecting, capturing, purchasing, receiving through trade, or otherwise obtaining their biometric identifiers and/or biometric information in compliance with 740 ILCS 14/15(b)(3);

    g.    Whether AWS and/or Amazon sold, leased, traded, or otherwise profited from Plaintiff's and the Class Members' biometric identifiers and/or biometric information; and

    h.    Whether any of AWS' and/or Amazon's violations of BIPA were negligent or, rather, were reckless or intentional.

163.    **Adequacy.**  Plaintiff is a member of the Class and Subclass he seeks to represent, committed to the vigorous prosecution of this action, and has retained competent counsel experienced in the prosecution of class actions.  Plaintiff has no conflicts of interest with other class members and is an adequate representative who will fairly and adequately protect the interests of the Class and Subclass.

164.    **Superiority.**  A class action is a superior method for the fair and efficient adjudication of the controversy.  Because the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of AWS and Amazon, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, Class members will continue to suffer losses and the misconduct of AWS and Amazon will proceed without remedy.  Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard that might otherwise go

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court. Finally, Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

165.    **Class Action on Limited Issues.**  Because there are common individual issues among the Class, it is appropriate for this action to be maintained as a class action with respect to particular issues if necessary.  *See* Fed. R. Civ. P. 23(c)(4).

## COUNT I

## AWS' Violations of the Biometric Information Privacy Act, 740 ILCS 14/15(a)

166.    Plaintiff incorporates and realleges each paragraph above as if fully set forth herein.

167.    AWS qualifies as a "private entity" under BIPA.  740 ILCS 14/10.

168.    As set forth herein, on numerous occasions during the Class Period, AWS has been in possession of Plaintiff's and the Class Members' (a) Face Geometry and/or (b) other information based on the Face Geometry used to identify Plaintiff and Class Members.

169.    The Face Geometries of Plaintiff and the Class Members constitute "biometric identifiers" pursuant to 740 ILCS 14/10.

170.    Any other information based on the Face Geometry of Plaintiff and the Class used to identify Plaintiff and such Class Members constitutes "biometric information" pursuant to 740 ILCS 14/10.

171.    For some or all of the Class Period, AWS did not develop, publicly disclose, and/or comply with a written policy establishing a retention schedule and guidelines for permanently destroying these biometric identifiers and biometric information to occur by the

CLASS ACTION COMPLAINT - 38

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

earlier of: (a) when the original purpose for collecting or obtaining such identifiers has been satisfied, or (b) within 3 years of the individual's last interaction with the private entity, as required by 740 ILCS 14/15(a).

172.    AWS' failure to create a retention policy and permanently delete Plaintiff and the Class Members' biometric identifiers and/or biometric information in compliance with such policy constitutes a violation of 740 ILCS 14/15(a).

173.    In violating BIPA, a law in effect since 2008, AWS acted, and continues to act, recklessly and/or intentionally.  At the least, AWS negligently violated BIPA.

174.    Plaintiff and the Class Members are "aggrieved" under BIPA based on AWS' violation of their rights under BIPA, and accordingly are entitled to seek damages and relief provided for under the statute. *See Rosenbach*, 2019 IL 123186, ¶ 40; 740 ILCS 14/20.

175.    AWS' failure to maintain and comply with data retention and destruction protocols harmed, or posed a material risk of harm to, the concrete privacy interests of Plaintiff and the Class, including the right to make informed choices about the use of and control over their inherently sensitive biometric data and to be free from unlawful retention of such sensitive data.

176.    Plaintiff and the Class Members seek, *inter alia*, statutory damages of $5,000 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), statutory damages of $1,000 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1), and reasonable attorneys' fees and costs pursuant to 740 ILCS 14/20(3).

WHEREFORE, Plaintiff and the Class pray for the relief requested in the Prayer for Relief set forth below.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1

## COUNT II

2

## AWS' Violations of the Biometric Information Privacy Act, 740 ILCS 14/15(b)

3       177.    Plaintiff incorporates and realleges each paragraph above as if fully set forth

4  herein.

5       178.    As set forth herein, on numerous occasions during the Class Period, AWS

6  collected, captured, purchased, received through trade, or otherwise obtained Plaintiff's and the

7  Class Members' Face Geometry and/or other information based on the Face Geometry used to

8  identify Plaintiff and such Class Members.

9

10      179.    For some or all of the Class Period, AWS did not properly inform Plaintiff and

11 the Class in writing that their biometric identifiers and/or biometric information was being

12 collected and/or stored, as required by 740 ILCS 14/15(b)(1).

13      180.    For some or all of the Class Period, AWS did not properly inform Plaintiff and

14 the Class in writing of the specific purpose and length of term for which their biometric

15 identifiers and/or biometric information was being collected, stored, and used, as required by

16 740 ILCS 14/15(b)(2).

17

18      181.    For some or all of the Class Period, AWS collected, captured, purchased,

19 received through trade, or otherwise obtained the biometric identifiers and/or biometric

20 information of Plaintiff and the Class without first obtaining from Plaintiff and the Class

21 Members the specific executed written release required by 740 ILCS 14/15(b)(3).

22      182.    In violating BIPA, a law in effect since 2008, AWS acted, and continues to act,

23 recklessly and/or intentionally.  At the least, AWS negligently violated BIPA.

24

25

26

CLASS ACTION COMPLAINT - 40

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

183.    Plaintiff and the Class Members are "aggrieved" under BIPA based on AWS'
violation of their rights under BIPA, and accordingly are entitled to seek damages and relief
provided for under the statute. *See Rosenbach*, 2019 IL 123186, ¶ 40; 740 ILCS 14/20.

184.    AWS' failure to disclose its practices and obtain the informed consent of
Plaintiff and the Class Members before collecting or otherwise obtaining their biometric data
harmed, or posed a material risk of harm to, the concrete privacy interests of Plaintiff and the
Class, including the right to make informed choices about the use of and control over their
inherently sensitive biometric data and to be free from the unlawful collection of such sensitive
data.

185.    Plaintiff and the Class Members seek, *inter alia*, statutory damages of $5,000
per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), statutory damages
of $1,000 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1), and reasonable
attorneys' fees and costs pursuant to 740 ILCS 14/20(3).

WHEREFORE, Plaintiff and the Class pray for the relief requested in the Prayer for
Relief set forth below.

## COUNT III

### AWS' Violations of the Biometric Information Privacy Act, 740 ILCS 14/15(c)

186.    Plaintiff incorporates and realleges each paragraph above as if fully set forth
herein.

187.    As set forth herein, AWS received money from Take 2/2K Games to create
biometric identifiers of Plaintiff and the Class Members in conjunction with data provided by
Plaintiff and the Class Members via the NBA 2K Games and App.

CLASS ACTION COMPLAINT - 41

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

188.     As set forth herein, Take 2/2K Games shared or gave AWS access to Plaintiff's and the Class Members' biometric identifiers and biometric information and, in return for that access, AWS received something of value—namely a fee from Take 2/2K Games.

189.     As set forth herein, on numerous occasions during the Class Period, AWS has been in possession of Plaintiff's and the Class Members' Face Geometry and/or other information based on the Face Geometry used to identify Plaintiff and such Class Members.

190.     For some or all of the Class Period, AWS has been in possession of and profiting from Plaintiff's and the Class Members' biometric identifiers and/or biometric information, by, among other things, marketing, selling, and performing biometric data storage and delivery services that included creating, collecting, and transmitting Plaintiff's and the Class Member's biometric identifiers and/or information, all of which it does knowingly and without Plaintiff's knowledge or consent.

191.     AWS' conduct described herein constitutes a violation of 740 ILCS 14/15(c).

192.     In violating BIPA, a law in effect since 2008, AWS acted, and continues to act, recklessly and/or intentionally.  At the least, AWS negligently violated BIPA.

193.     Plaintiff and the Class Members are "aggrieved" under BIPA based on AWS' violation of their rights under BIPA, and accordingly are entitled to seek damages and relief provided for under the statute.  *See Rosenbach*, 2019 IL 123186, ¶ 40; 740 ILCS 14/20.

194.     AWS' profiting off of the biometric data of Plaintiff and the Class Members harmed, or posed a material risk of harm to, the concrete privacy interests of Plaintiff and the Class, including the right to manage the collection, use of, and control over their inherently sensitive data in the possession of others.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

195.     Plaintiff and the Class Members seek, *inter alia*, statutory damages of $5,000 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), statutory damages of $1,000 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1), and reasonable attorneys' fees and costs pursuant to 740 ILCS 14/20(3).

WHEREFORE, Plaintiff and the Class pray for the relief requested in the Prayer for Relief set forth below.

### COUNT IV

### AWS' Violations of the Biometric Information Privacy Act, 740 ILCS 14/15(d)

196.     Plaintiff incorporates by reference each and every allegation set forth above.

197.     As set forth above, for some or all of the Class Period, AWS disclosed, redisclosed, or otherwise disseminated Plaintiff's and the Class Members' biometric identifiers and/or biometric information.

198.     AWS disclosed, redisclosed, or disseminated Plaintiff's and the Class Members' biometric identifiers and/or biometric information without satisfying the requirements of 740 ILCS 14/15(d).  Specifically, AWS has never informed nor received consent from Plaintiff or the Class Members to disclose and/or redisclose their biometric identifiers and biometric information to third parties; the disclosure or redisclosure did not complete a financial transaction authorized by the subject; and the disclosure or redisclosure was not required by law or pursuant to a valid warrant or subpoena.

199.     In violating BIPA, a law in effect since 2008, AWS acted, and continues to act, recklessly and/or intentionally.  At the least, AWS negligently violated BIPA.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

200.    Plaintiff and the Class Members are "aggrieved" under BIPA based on AWS' violation of their rights under BIPA, and accordingly are entitled to seek damages and relief provided for under the statute. *See Rosenbach*, 2019 IL 123186, ¶ 40; 740 ILCS 14/20.

201.    AWS' failure to disclose its practices and obtain the informed consent of Plaintiff and the Class Members before disclosing, redisclosing, or disseminating their biometric data harmed, or posed a material risk of harm to, the concrete privacy interests of Plaintiff and the Class, including the right to make informed choices about the use of, dissemination of, and control over their inherently sensitive biometric data and to be free from the unlawful dissemination of such sensitive data.

202.    Plaintiff and the Class Members seek, *inter alia*, statutory damages of $5,000 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), statutory damages of $1,000 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1), and reasonable attorneys' fees and costs pursuant to 740 ILCS 14/20(3).

WHEREFORE, Plaintiff and the Class pray for the relief requested in the Prayer for Relief set forth below.

### COUNT V

### Amazon's Violations of the Biometric Information Privacy Act, 740 ILCS 14/15(a)

203.    Plaintiff incorporates and realleges each paragraph above as if fully set forth herein.

204.    Amazon qualifies as a "private entity" under BIPA.  740 ILCS 14/10.

205.    As set forth herein, on numerous occasions during the Class Period, Amazon has been in possession of Plaintiff's and the Class Members' Face Geometry and/or other information based on the Face Geometry used to identify Plaintiff and such Class Members.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

206.     The Face Geometries of Plaintiff and the Class Members constitute "biometric identifiers" pursuant to 740 ILCS 14/10.

207.     Any other information based on the Face Geometry of Plaintiff and the Class used to identify Plaintiff and such Class Members constitutes "biometric information" pursuant to 740 ILCS 14/10.

208.     For some or all of the Class Period, Amazon did not develop, publicly disclose, and/or comply with a written policy establishing a retention schedule and guidelines for permanently destroying these biometric identifiers and biometric information to occur by the earlier of: (a) when the original purpose for collecting or obtaining such identifiers has been satisfied, or (b) within 3 years of the individual's last interaction with the private entity, as required by 740 ILCS 14/15(a).

209.     Amazon's failure to create a retention policy and permanently delete Plaintiff and the Class Members' biometric identifiers and/or biometric information in compliance with such policy constitutes a violation of 740 ILCS 14/15(a).

210.     In violating BIPA, a law in effect since 2008, Amazon acted, and continues to act, recklessly and/or intentionally.  At the least, Amazon negligently violated BIPA.

211.     Plaintiff and the Class Members are "aggrieved" under BIPA based on Amazon's violation of their rights under BIPA, and accordingly are entitled to seek damages and relief provided for under the statute. *See Rosenbach*, 2019 IL 123186, ¶ 40; 740 ILCS 14/20.

212.     Amazon's failure to maintain and comply with data retention and destruction protocols harmed, or posed a material risk of harm to, the concrete privacy interests of Plaintiff and the Class, including the right to make informed choices about the use of and control over

CLASS ACTION COMPLAINT - 45

their inherently sensitive biometric data and to be free from unlawful retention of such sensitive data.

213.    Plaintiff and the Class Members seek, *inter alia*, statutory damages of $5,000 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), statutory damages of $1,000 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1), and reasonable attorneys' fees and costs pursuant to 740 ILCS 14/20(3).

WHEREFORE, Plaintiff and the Class pray for the relief requested in the Prayer for Relief set forth below.

## **COUNT VI**

### **Amazon's Violations of the Biometric Information Privacy Act, 740 ILCS 14/15(b)**

214.    Plaintiff incorporates and realleges each paragraph above as if fully set forth herein.

215.    As set forth herein, on numerous occasions during the Class Period, Amazon collected, captured, purchased, received through trade, or otherwise obtained Plaintiff's and the Class Members' Face Geometry and/or other information based on the Face Geometry used to identify Plaintiff and such Class Members.

216.    For some or all of the Class Period, Amazon did not properly inform Plaintiff and the Class in writing that their biometric identifiers and/or biometric information was being collected and/or stored, as required by 740 ILCS 14/15(b)(1).

217.    For some or all of the Class Period, Amazon did not properly inform Plaintiff and the Class in writing of the specific purpose and length of term for which their biometric identifiers and/or biometric information was being collected, stored, and used, as required by 740 ILCS 14/15(b)(2).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

218.    For some or all of the Class Period, Amazon collected, captured, purchased, received through trade, or otherwise obtained the biometric identifiers and/or biometric information of Plaintiff and the Class without first obtaining from Plaintiff and the Class Members the specific executed written release required by 740 ILCS 14/15(b)(3).

219.    In violating BIPA, a law in effect since 2008, Amazon acted, and continues to act, recklessly and/or intentionally.  At the least, Amazon negligently violated BIPA.

220.    Plaintiff and the Class Members are "aggrieved" under BIPA based on Amazon's violation of their rights under BIPA, and accordingly are entitled to seek damages and relief provided for under the statute. *See Rosenbach*, 2019 IL 123186, ¶ 40; 740 ILCS 14/20.

221.    Amazon's failure to disclose its practices and obtain the informed consent of Plaintiff and the Class Members before collecting or otherwise obtaining their biometric data harmed, or posed a material risk of harm to, the concrete privacy interests of Plaintiff and the Class, including the right to make informed choices about the use of and control over their inherently sensitive biometric data and to be free from the unlawful collection of such sensitive data.

222.    Plaintiff and the Class Members seek, *inter alia*, statutory damages of $5,000 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), statutory damages of $1,000 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1), and reasonable attorneys' fees and costs pursuant to 740 ILCS 14/20(3).

WHEREFORE, Plaintiff and the Class pray for the relief requested in the Prayer for Relief set forth below.

CLASS ACTION COMPLAINT - 47

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

## COUNT VII

### Amazon's Violations of the Biometric Information Privacy Act, 740 ILCS 14/15(c)

223.    Plaintiff incorporates and realleges each paragraph above as if fully set forth herein.

224.    As set forth herein, Amazon received money from Take 2/2K Games to create biometric identifiers of Plaintiff and the Class Members in conjunction with data provided by Plaintiff and the Class Members via the NBA 2K Games and App.

225.    As set forth herein, Take 2/2K Games shared or gave Amazon access to Plaintiff's and the Class Members' biometric identifiers and biometric information and, in return for that access, Amazon received something of value—namely a fee from Take 2/2K Games.

226.    As set forth herein, on numerous occasions during the Class Period, Amazon has been in possession of Plaintiff's and the Class Members' Face Geometry and/or other information based on the Face Geometry used to identify Plaintiff and such Class Members.

227.    For some or all of the Class Period, Amazon has been in possession of and profiting from Plaintiff's and the Class Members' biometric identifiers and/or biometric information, by, among other things, marketing, selling, and performing biometric data storage and delivery services that included creating, collecting, and transmitting Plaintiff's and the Class Member's biometric identifiers and/or information, all of which it does knowingly and without Plaintiff's knowledge or consent.

228.    Amazon's conduct described herein constitutes a violation of 740 ILCS 14/15(c).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

229.    In violating BIPA, a law in effect since 2008, Amazon acted, and continues to act, recklessly and/or intentionally.  At the least, Amazon negligently violated BIPA.

230.    Plaintiff and the Class Members are "aggrieved" under BIPA based on Amazon's violation of their rights under BIPA, and accordingly are entitled to seek damages and relief provided for under the statute.  *See Rosenbach*, 2019 IL 123186, ¶ 40; 740 ILCS 14/20.

231.    Amazon's profiting off of the biometric data of Plaintiff and the Class Members harmed, or posed a material risk of harm to, the concrete privacy interests of Plaintiff and the Class, including the right to manage the collection of, use of, and control over their inherently sensitive data in the possession of others.

232.    Plaintiff and the Class Members seek, *inter alia*, statutory damages of $5,000 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), statutory damages of $1,000 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1), and reasonable attorneys' fees and costs pursuant to 740 ILCS 14/20(3).

WHEREFORE, Plaintiff and the Class pray for the relief requested in the Prayer for Relief set forth below.

## COUNT VIII

### Amazon's Violations of the Biometric Information Privacy Act, 740 ILCS 14/15(d)

233.    Plaintiff incorporates by reference each and every allegation set forth above.

234.    As set forth above, for some or all of the Class Period, Amazon disclosed, redisclosed, or otherwise disseminated Plaintiff's and the Class Members' biometric identifiers and/or biometric information.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

235.    Amazon disclosed, redisclosed, or disseminated Plaintiff's and the Class Members' biometric identifiers and/or biometric information without satisfying the requirements of 740 ILCS 14/15(d).  Specifically, Amazon has never informed nor received consent from Plaintiff or the Class Members to disclose and/or redisclose their biometric identifiers and biometric information to third parties; the disclosure or redisclosure did not complete a financial transaction authorized by the subject; and the disclosure or redisclosure was not required by law or pursuant to a valid warrant or subpoena.

236.    In violating BIPA, a law in effect since 2008, Amazon acted, and continues to act, recklessly and/or intentionally.  At the least, Amazon negligently violated BIPA.

237.    Plaintiff and the Class Members are "aggrieved" under BIPA based on Amazon's violation of their rights under BIPA, and accordingly are entitled to seek damages and relief provided for under the statute.  *See Rosenbach*, 2019 IL 123186, ¶ 40; 740 ILCS 14/20.

238.    Amazon's failure to disclose its practices and obtain the informed consent of Plaintiff and the Class Members before disclosing, redisclosing, or disseminating their biometric data harmed, or posed a material risk of harm to, the concrete privacy interests of Plaintiff and the Class, including the right to make informed choices about the use of, dissemination of, and control over their inherently sensitive biometric data and to be free from the unlawful dissemination of such sensitive data.

239.    Plaintiff and the Class Members seek, *inter alia*, statutory damages of $5,000 per intentional or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), statutory damages of $1,000 per negligent violation of BIPA pursuant to 740 ILCS 14/20(1), and reasonable attorneys' fees and costs pursuant to 740 ILCS 14/20(3).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

WHEREFORE, Plaintiff and the Class pray for the relief requested in the Prayer for Relief set forth below.

## COUNT IX

### Unjust Enrichment (AWS and Amazon)

240.     Plaintiff incorporates by reference each and every allegation set forth above.

241.     Defendants Amazon and AWS obtained monetary benefits from Plaintiff and Class Members to their detriment.  Defendants did so by profiting off of Plaintiff's and Class Members' biometric identifiers and biometric information, while exposing Plaintiff and Class Members to a heightened risk of privacy and informational harms and depriving them of their control over their biometric data.

242.     Plaintiff and Class Members did not authorize Defendants Amazon and AWS to collect, obtain, store, use, possess and profit off of their biometric identifiers and biometric information.

243.     Defendants Amazon and AWS collected, obtained, used, stored, profited from, or disseminated the biometric identifiers and/or biometric information of Plaintiff and the putative Class through inequitable means in that it did so without permission and in violation of Illinois law.

244.     Defendants Amazon and AWS appreciated, accepted, and retained the benefit bestowed upon them under inequitable and unjust circumstances arising from Defendants' conduct toward Plaintiff and Class Members as described herein.

245.     As a result, Defendants Amazon and AWS have been unjustly enriched at the expense of Plaintiff and the Class.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

246.     Under principles of equity and good conscience, Defendants Amazon and AWS should not be permitted to retain the benefits obtained through unlawfully collecting, obtaining, using, storing, profiting from, or disseminating the biometric data of Plaintiff and the Class.

247.     Accordingly, Plaintiff and the Class seek full disgorgement and restitution of the amounts Amazon and AWS have retained as a result of the unlawful and/or wrongful conduct alleged herein, an amount which will be proved at trial.

WHEREFORE, Plaintiff and the Class pray for the relief requested in the Prayer for Relief set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class, pray for judgment against Defendants as follows:

A.     entering an order certifying the Class and Subclass as requested herein and appointing the undersigned as lead counsel for the Class and Subclass;

B.     awarding statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

C.     enjoining Defendants from collecting, possessing, obtaining, storing, using, selling, leasing, trading, profiting from, disclosing, redisclosing, or otherwise disseminating Plaintiff's and the Class's biometric identifiers until done so in compliance with BIPA;

D.     disgorging the profits from AWS' and Amazon's unjust enrichment;

E.     awarding Plaintiff his reasonable attorneys' fees, costs, and other expenses pursuant to 740 ILCS 14/20(3);

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

F.     awarding Plaintiff pre-judgment and post-judgment interest, as provided by law; and

G.     awarding such other and further relief as is just and appropriate.

### JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated this 29th day of October, 2021.          Respectfully submitted,

**TOUSLEY BRAIN STEPHENS PLLC**

By:  /s/ Jason T. Dennett
/s/ Cecily C. Jordan
Jason T. Dennett, WSBA #30686
jdennett@tousley.com
Cecily C. Jordan, WSBA #50061
cjordan@tousley.com
1200 Fifth Avenue, Suite 1700
Seattle, WA 98101-4416
Telephone: (206) 682-5600

Kevin P. Green, *pro hac vice forthcoming*
kevin@ghalaw.com
**GOLDENBERG HELLER
& ANTOGNOLI, P.C.**
2227 South State Route 157
Edwardsville, IL 62025
Telephone: 618-656-5150
Facsimile: 618-656-6230

Christian G. Montroy, *pro hac vice forthcoming*
cmontroy@montroylaw.com
**MONTROY LAW OFFICES LLC**
2416 North Center
PO Box 369
Maryville, IL 62062
Telephone:618-223-8200

***Attorneys for Plaintiff***

CLASS ACTION COMPLAINT - 53

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL 206.682.5600 • FAX 206.682.2992