1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6
7
8
9

ANN MAYHALL, on behalf of her Minor
Child, D.M., individually and on behalf of
all others similarly situated,

Plaintiff,

10
11

v.

12

AMAZON WEB SERVICES INC., *et al.*,

13

Defendants.

Case No. C21-1473-TL-MLP

REPORT AND RECOMMENDATION

14
15

## I.    INTRODUCTION

16

Before the Court is Defendants Amazon Web Services Inc. ("AWS") and Amazon.com

17

Inc.'s (collectively, "Defendants") Motion to Dismiss for Failure to State a Claim ("Defendants'

18

Motion"). (Defs.' Mot. (dkt. # 18).) Plaintiff Ann Mayhall filed this action, on behalf of her

19

minor child D.M, alleging class-action claims for: (1) violations of Illinois's Biometric

20

Information Privacy Act ("BIPA"), 740 ILCS 14/15(a); and (2) unjust enrichment. (Compl. (dkt.

21

# 1).) Plaintiff's claims generally arise from Defendants' provision of cloud services to

22

Take-Two Interactive ("Take-Two") and 2K Games for their NBA 2K video game series, which

23

Plaintiff alleges allows Defendants to create, disseminate, and store biometric data. (Compl. at

REPORT AND RECOMMENDATION - 1

¶¶ 8-21, 166-247.) Plaintiff filed a response (Pl.'s Resp. (dkt. # 20)), and Defendants filed a reply (Defs.' Reply (dkt. # 23)). The Court heard oral argument from the parties on May 4, 2022. (Dkt. # 30.)

Having considered the parties' submissions, oral argument, the balance of the record, and the governing law, the Court recommends that Defendants' Motion (dkt. # 18) be DENIED, as further explained below.

## II.    BACKGROUND

Take-Two, and its subsidiary 2K Games, annually publish NBA 2K, a basketball video game. (Compl. at ¶¶ 9, 77-81.) For online services related to the NBA 2K games, Take-Two utilizes Amazon's cloud-computing services. (*Id.* at ¶¶ 9-11, 83-85.) Plaintiff alleges that Defendants have shared facilities and infrastructure, such that AWS enters into contractual relationships with video game companies for its cloud services but employs Amazon.com facilities and infrastructure to provide the services. (*Id.* at ¶¶ 11, 59-63, 65-68.)

In this case, Plaintiff alleges that Take-Two utilizes Defendants' "Amazon CloudFront" service, a content storage and delivery network that speeds up content delivery by distributing and storing content at "Edge" and "Regional Edge Cache" data server locations. (*Id.* at ¶¶ 47-58, 107.) Plaintiff alleges that six of Defendants' "Edge" data server locations are located in Chicago, Illinois. (*Id.* at ¶ 51.) Plaintiff further alleges that if the content is not in an "Edge" data server location, CloudFront attempts to retrieve the content from either a "Regional Edge Cache" data server location or an "Origin Server" to deliver it to the "Edge" data server, and ultimately, to the end user. (*Id.* at ¶¶ 53-56.) Relevant to the instant matter, Plaintiff alleges that during this process, the content is stored in each "Edge" and "Regional Edge Cache" data server location

from which it is delivered to reduce latency the next time the user requests the content. (*Id.* at ¶¶ 57-58, 73.)

In addition to publishing NBA 2K, Take-Two publishes a companion app (the "App") for mobile devices that *inter alia* allows users to upload images of their face to make customized players resembling the user in the NBA 2K video game. (Compl. at ¶¶ 12-15, 86-89, 93.) To create a customized player in this fashion, the user is required to log into the App and take multiple pictures of their face. (*Id.* at ¶¶ 13, 93-96.) Plaintiff alleges that the photos collected by the App are then compressed and uploaded to a Take-Two server. (*Id.* at ¶¶ 14, 97, 104.) After the user uploads the photos through the App, the user is then required to log into their gaming platform and select an option when creating a customized player to "Check for Head Scan Data." (*Id.* at ¶¶ 15, 97-100.) Once selected, Plaintiff alleges that the game makes a request to Defendants' servers to retrieve the face-scan photos from Take-Two's server. (*Id.* at ¶¶ 16, 105.) Plaintiff alleges that Defendants' servers are then utilized to collect facial feature vectors from the face-scan data and that those vectors are employed to construct a three-dimensional model of the user's face (the "face geometry") using Defendants' computing power. (*Id.* at ¶¶ 16, 106.) While this process is ongoing, the game depicts a circle moving from 0% to 100% above the text: "Building your MyPLAYER's unique scanned head. This may take a few minutes." (*Id.* at ¶ 100.)

Once the user's face geometry is created, Plaintiff alleges that Defendants transmit the face geometry via CloudFront through Defendants' "Edge" and "Regional Edge Cache" server locations to deliver it to the user's gaming platform and game session. (Compl. at ¶¶ 16, 107, 109.) Plaintiff alleges that the face geometry transmitted constitutes a "biometric identifier" per BIPA, that Defendants store this data at each data server location through which it is transmitted

to the user, and that Defendants do not disclose how long the face geometry or associated data is stored on their server locations. (*Id.* at ¶¶ 17-18, 108, 110, 112.) Plaintiff further alleges that once the face geometry is created and used to make a customized player, the user must remain connected to the internet to play NBA 2K using the customized player. (*Id.* at ¶ 113.) Plaintiff alleges that the customized player is not stored locally on the gaming platform's hard drive, and thus, the process of delivering, storing, and transmitting the facial geometry through Defendants' server locations is repeated each time the user seeks to play with their customized player. (*Id.* at ¶¶ 113-117.) The face geometry creation, delivery, and storage process is depicted in Plaintiff's complaint as follows:





(Compl. at ¶ 111.)

Pertinent to the instant action, in early 2021, D.M. created a customized player in the NBA 2K21 video game on his Xbox One. (Compl. at ¶¶ 135, 137.) To create the customized player, Plaintiff alleges that D.M. downloaded the App without parental knowledge or consent, took multiple pictures of his face, and uploaded them via the App. (*Id.* at ¶¶ 136-139.) D.M. then logged on to his Xbox One to create his customized player. (*Id.* at ¶ 140.) When D.M. clicked the button to create his customized player, Plaintiff alleges that his Xbox One made a request to Defendants' servers to retrieve D.M.'s photos from the Take-Two server to create a face geometry on Defendants' servers. (*Id.* at ¶¶ 141-142.)

Once D.M.'s face geometry was created, Plaintiff alleges that Defendants transmitted it via CloudFront through their "Edge" and "Regional Edge Cache" systems and delivered it to D.M.'s Xbox One at his home in Illinois. (Compl. at ¶ 144.) Plaintiff alleges that Defendants stored D.M.'s face geometry at each "Edge" and "Regional Edge Cache" data center location through which it passed. (*Id.* at ¶¶ 145, 147-48.) Plaintiff alleges that any requests related to D.M.'s face geometry were routed to or through the "Edge" data server location in Chicago, Illinois, and that his face geometry and biometric information were obtained, stored, and transmitted from that location. (Compl. at ¶¶ 151-52.) Finally, Plaintiff alleges that D.M. played NBA 2K21 using his customized player with his scanned face on multiple occasions throughout 2021, and that every time D.M. played NBA 2K21 with his customized player, Defendants obtained, delivered, and stored his face geometry and/or biometric information on their servers. (*Id.* at ¶¶ 149-150.)

Based on the above allegations, Plaintiff brings class-action claims pursuant to BIPA, Sections 15(a)-(d), and for unjust enrichment. (Compl. at ¶¶ 154-247.) In sum, Plaintiff alleges

that Defendants' failure to develop, make publicly available, or comply with a written retention and destruction policy for biometric data is in violation of BIPA. (*Id.* at ¶¶ 171, 208.) Plaintiff claims that Defendants improperly sold, traded, or profited from Plaintiff and Class Members' biometric data and disseminated it without consent. (*Id.* at ¶¶ 186-90, 197-98, 223-27, 234-35.) Plaintiff alleges that Defendants did not provide advance notice to Plaintiff and Class Members of any collection, capturing, receiving, or obtaining of biometric data, nor did they receive written releases before doing so. (*Id.* at ¶¶ 178-81, 215-18.) Finally, Plaintiff alleges that Defendants were unjustly enriched by Plaintiff and Class Members' biometric information, depriving them of control over their biometric data, while exposing both them and their biometric information to a heightened risk of privacy and informational harms. (*Id.* at ¶¶ 241, 244-46.)

### III.    DISCUSSION

Defendants contend that Plaintiff's claims in this matter largely amount to a futile attempt to "force a square peg into a round hole," because as a cloud services provider, Defendants did not possess, obtain, sell, lease, trade, disseminate, or otherwise interact with biometric data stored by Take-Two such that Defendants are subject to BIPA liability. (Defs.' Reply at 1.) To a degree, the Court understands Defendants' skepticism that they could be found liable for biometric data utilized by Take-Two simply because Defendants offer cloud storage services.

Nevertheless, Plaintiff's allegations at this early stage—as examined in the light of relevant case law and BIPA's plain language—demonstrate that Plaintiff has plausibly alleged that Defendants were in possession of and/or obtained D.M.'s biometric data, which they then utilized to create facial geometry, disseminated, and stored on their servers without Plaintiff's

1    consent. In addition, the Court finds that Plaintiff has sufficiently stated a claim for unjust

2    enrichment.

3    **A.    Rule 12(b)(6) Legal Standard**

4    When considering a motion to dismiss under Rule 12(b)(6), the court construes the

5    complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon*

6    *Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The Court must accept all well-pleaded

7    facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v.*

8    *Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). However, the Court is not required

9    "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

10   unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

11   "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

12   accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

13   U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim

14   has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

15   reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 677-78. "A

16   pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

17   of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid

18   of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

19   **B.    Defendants' Exhibits**

20   First, Defendants' Motion attaches and relies on multiple exhibits that were not

21   incorporated or otherwise referenced as part of Plaintiff's complaint. Specifically, Defendants

22   have submitted copies of: (1) the AWS Customer Agreement (Defs.' Mot., Ex. A at 27-47); (2)

23   the AWS "Data Privacy FAQ" (Defs.' Mot., Ex. B at 48-49); and (3) an Amazon white paper

1    titled "Using AWS in the Context of Common Privacy and Data Protection Considerations"

2    ("Exhibit C") (Defs.' Mot., Ex. C at 50-73). Defendants argue that consideration of the exhibits

3    is appropriate because: (1) Plaintiff's complaint cites information from AWS's website, and thus,

4    incorporates Defendants' exhibits by reference; or (2) the exhibits are matters of public record

5    that the Court may take judicial notice of. (Defs.' Mot. at 7 n.4.) Plaintiff argues that

6    consideration of Defendants' exhibits is inappropriate because the evidence is outside of the

7    complaint and Defendants fail to meet the requirements to show that different webpages than

8    those cited by Plaintiff should be considered. (Pl.'s Resp. at 8 n.2.)

9            In deciding whether to dismiss a complaint for failing to state a claim, the Court is

10    generally bound by the facts and allegations contained within the four corners of the complaint.

11    *See Shaver v. Operating Eng'rs Loc. 428 Pension Tr. Fund*, 332 F.3d 1198, 1201 (9th Cir. 2003)

12    ("Generally, on a 12(b)(6) motion, [the Court] should consider only the pleadings."). However,

13    the Court may consider "materials incorporated into the complaint by reference, and matters of

14    judicial notice." *New Mexico State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094 (9th

15    Cir. 2011). "Incorporation by reference" doctrine allows for consideration of documents "whose

16    contents are alleged in a complaint and whose authenticity no party questions, but which are not

17    physically attached to the [plaintiff's] pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir.

18    2005) (internal quotations omitted). A court may also review materials on a motion to dismiss if

19    they are the subject of judicial notice. Judicial notice may be taken of facts that are not subject to

20    reasonable dispute because they are generally known or "capable of accurate and ready

21    determination by resort to sources whose accuracy cannot be reasonably questioned." *U.S. v.*

22    *Ritchie*, 342 F.3d 903, 908-09 (9th Cir. 2003); Fed. R. Evid. 201(b).

23

Plaintiff's complaint cites in footnotes to four different webpages hosted by Amazon, none of which include or reference Defendants' submitted exhibits. (*See* Compl. at ¶¶ 49 n.4 (citing to "Amazon Cloudfront Key Features," https://aws.amazon.com/cloudfront/features/ (last visited May 24, 2022)), 64 n.11 (citing to "What is Computer Vision?" https://aws.amazon.com/computer-vision/ (last visited May 24, 2022)), 67 n.13 (citing to "What is Cloud Computing?," https://aws.amazon.com/what-is-cloud-computing/ (last visited May 24, 2022)), 68 n.14 (citing to "AWS for Games," https://aws.amazon.com/gametech/ (last visited May 24, 2022).) Defendants fail to show that the webpages cited in Plaintiff's complaint incorporate Defendants' exhibits by reference or that Plaintiff's claims otherwise depend on Defendants' exhibits. *See Knievel*, 393 F.3d at 1076. Nor have Defendants demonstrated that a viewer accessing the webpages cited by Plaintiff "must also access the surrounding pages" including Defendants' exhibits. *Id.*

However, the Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The AWS Customer Agreement and AWS "Data Privacy FAQ" both appear on publicly available websites and the facts included are not subject to reasonable dispute. Therefore, both exhibits are proper subjects for judicial notice. *See, e.g.*, *Brown v. Google LLC*, 525 F.Supp.3d 1049, 1061 (N.D. Cal. 2021) (taking judicial notice of Google's Terms of Service and a version of Google's Privacy Policy); *In re Google Assistant Priv. Litig.*, 457 F.Supp.3d 797, 813-14 (N.D. Cal. 2020) (taking judicial notice of Google's Terms of Service, Privacy Policy, and a Google blog post); *Matera v. Google, Inc.*, 2016 WL 5339806, at *7 (N.D. Cal. Sept. 23, 2016) (same).

The same cannot be said of Exhibit C. Plaintiff disputes that the Amazon white paper has binding effect or relevance to Plaintiff's claims, arguing that it notes it: (a) "is for informational purposes only"; (b) "represents current AWS product offerings and practices, which are subject to change without notice"; (c) "does not create any commitments or assurances from AWS"; and (d) "is not part of, nor does it modify, any agreement between AWS and its customers." (Pl.'s Resp. at 8 n.3 (citing Defs.' Mot., Ex. C at 52).) Plaintiff additionally contends that nothing contained in Exhibit C states that AWS customers retain exclusive ownership or control over their content. (*Id.*)

As indicated by Plaintiff's opposition, the accuracy and nature of the Amazon white paper is not beyond reasonable dispute. "Because the effect of judicial notice is to deprive a party of an opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)." *Rivera v. Philip Morris, Inc.,* 395 F.3d 1142, 1151 (9th Cir. 2005) (internal citations omitted); *see also F.T.C. v. Amazon.com, Inc.*, 71 F.Supp.3d 1158, 1161 (W.D. Wash. 2014). Erring on the side of such caution, Exhibit C will not be considered in evaluating Defendants' Motion.

## C.    Rule 8(a) and Group Pleading

Next, Defendants argue that Plaintiff improperly grouped AWS and Amazon.com, in violation of Rule 8(a)'s pleading standards, because Amazon.com did not contract to provide Take-Two cloud storage or any service. (Defs.' Mot. at 18-19.) Plaintiff counters that the claims are adequately alleged against AWS and Amazon.com because Defendants are generally integrated entities, which supports a plausible inference that each has possession and/or control over the biometric data due to their shared infrastructure. (Pl.'s Resp. at 23-24.)

1    Rule 8(a) of the Federal Rules of Civil Procedure provides that for a pleading to state a

2    claim for relief, it must contain a short and plain statement of the grounds for the court's

3    jurisdiction, a short and plain statement of the claim showing that the pleader is entitled to relief,

4    and a demand for the relief sought. The statement of the claim must be sufficient to "give the

5    defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*

6    *v. Gibson*, 355 U.S. 41, 47 (1957).

7    A complaint which lumps together multiple defendants in one broad allegation generally

8    fails to satisfy the notice requirement of Rule 8(a)(2). *See Adobe Sys. Inc. v. Blue Source Grp.,*

9    *Inc.*, 125 F.Supp.3d 945, 964 (N.D. Cal. 2015). But "[g]roup pleading is not fatal to a complaint

10   if the complaint still gives defendants fair notice of the claims against them." *Tivoli LLC v.*

11   *Sankey*, 2015 WL 12683801, at *3 (C.D. Cal. Feb. 3, 2015). Where defendants are alleged to be

12   "related entities" who acted in concert "it is entirely possible that the allegations of wrongdoing

13   are intended to include each and every entity defendant." *Id.* at *4; *see also Munning v. Gap,*

14   *Inc.*, 2016 WL 6393550, at *3 (N.D. Cal. Oct. 28, 2016) ("[B]ecause the Defendants all share a

15   parent-subsidiary relationship . . . and because all the Defendants are represented by the same

16   counsel, frustration of notice of the claims to each defendant is unlikely.").

17   Here, based on the factual allegations in Plaintiff's complaint, Plaintiff has adequately

18   raised claims against AWS and Amazon.com. Plaintiff's complaint outlines the interrelatedness

19   of AWS and Amazon.com based on the alleged joint ownership and hosting of servers and their

20   shared infrastructure. (*See* Compl. at ¶¶ 59-64.) Specifically, Plaintiff alleges that: (1) the servers

21   at the "AWS Edge Locations" and "AWS Regional Edge Caches" in this matter are hosted by

22   Amazon.com; (2) Amazon.com owns, leases, operates and/or controls data centers used by

23   AWS; and (3) that per Amazon.com's 2021 Form 10-K filing, Amazon.com acknowledges it

1   "leverage[s] a shared infrastructure [with AWS] that supports both our internal technology

2   requirements and external sales to AWS customers." (*See id.* at ¶¶ 59-61.) Moreover, Plaintiff's

3   complaint alleges that AWS enters into contractual relationships with video game companies,

4   such as Take-Two (*see id.* at ¶¶ 65, 67-68), but employs Amazon.com's shared facilities and

5   infrastructure to provide the services (*see id.* at ¶¶ 61-63, 66).

6          Additional discovery may uncover that AWS is the sole entity responsible in providing

7   the services and server infrastructure to Take-Two at issue in this case. But at the present time,

8   and as pleaded in Plaintiff's complaint, Plaintiff's claims against Amazon.com provide

9   Amazon.com fair notice of Plaintiff's claims and therefore do not run afoul of Rule 8 pleading

10  standards.[1]

11         **D.      Biometric Identity Protection Act ("BIPA")**

12         BIPA was enacted in 2008 to help regulate "the collection, use, safeguarding, handling,

13  storage, retention, and destruction of biometric identifiers and information." *Rosenbach v. Six*

14  *Flags Entm't. Corp.*, 129 N.E.3d 1197, 1203 (Ill. 2019) (citing 740 ILCS 14/1 *et seq.*). BIPA

15  "imposes numerous restrictions on how private entities collect, retain, disclose and destroy

16  biometric identifiers . . . Under the Act, any person 'aggrieved' by a violation of its

17  provisions 'shall have a right of action against an offending party' and 'may recover for each

18  violation.'" *Id.* at 1199 (quoting 740 ILCS 14/20). Under BIPA, "when a private entity fails to

19  comply with one of Section 15's requirements, that violation constitutes an invasion,

20  impairment, or denial of the statutory rights of any person or customer whose biometric identifier

21  or biometric information is subject to the breach." *Id.* at 1206.

22

23  _____

[1] In addition, the Court notes that Defendants are both represented by the same counsel. *Munning*, 2016 WL 6393550 at *3 ("[B]ecause all the Defendants are represented by the same counsel, frustration of notice of the claims to each defendant is unlikely.").

"Biometric identifiers" covered by BIPA include retina or iris scans, fingerprints, voiceprints, and scans of hand or face geometry. 740 ILCS 14/10. "Biometric information" covered by BIPA includes "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.*

For negligent violations of BIPA, a plaintiff may obtain "liquidated damages of $1,000 or actual damages, whichever is greater," 740 ILCS 14/20(1), and for intentional or reckless violations of BIPA, a plaintiff may collect "liquidated damages of $5,000 or actual damages, whichever is greater," 740 ILCS 14/20(2), for each violation. A plaintiff need not plead or prove additional consequences beyond the statutory violation. *Rosenbach*, 129 N.E.3d at 1206 ("The violation, in itself, is sufficient to support the individual's . . . statutory cause of action.").

Defendants have moved to dismiss all of Plaintiff's BIPA claims in their instant motion. (*See* Defs.' Mot.) The Court addresses the arguments applicable to each claim in turn.

      *i.*        *Section 15(a)*

Section 15(a) of BIPA requires that:

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

740 ILCS 14/15(a).

          1.    <u>Possession</u>

First, Defendants argue that Plaintiff fails to adequately allege Defendants were "in possession of" D.M.'s biometric information as required under Section 15(a) because Take-Two

owned and controlled the data. (Defs.' Mot. at 6-7.) Therefore, Defendants contend that Plaintiff fails to allege any facts supporting a plausible inference that Defendants exercised dominion or control over D.M.'s biometric information. (*Id.* at 7.) Plaintiff counters that the complaint plausibly alleges that Defendants are in possession of biometric information because an entity that creates biometric identifiers, then disseminates and stores it, is necessarily in possession of such data. (Pl.'s Resp. at 5-6.) Plaintiff further argues that exclusive ownership or control of the data is not required under Section 15(a) but merely possession. (*Id.* at 6-7.)

BIPA does not define "possession." *See* 740 ILCS 14/10. The Illinois Supreme Court has held possession "occurs when a person has or takes control of the subject property or holds the property at his or her disposal" *People v. Ward*, 830 N.E.2d 556, 560 (Ill. 2005). Courts have generally adopted this definition when analyzing BIPA claims. *See e.g.*, *Heard v. Becton, Dickinson & Co.*, 440 F.Supp.3d 960, 968 (N.D. Ill. 2020); *Namuwonge v. Kronos, Inc.*, 418 F.Supp.3d 279, 283-84 (N.D. Ill. 2019); *Rosenbach*, 129 N.E.3d at 1205. As such, allegations demonstrating that the defendant in any way controlled, accessed, received, or exerted dominion over the biometric data are typically required to show possession. *See Naughton v. Amazon.com, Inc.*, 2022 WL 19324, at *3 (N.D. Ill. Jan. 3, 2022) ("[Plaintiff] also specifically asserts that Amazon stores his biometric data in a database. This plainly satisfies the 'possession' requirement at the pleadings stage."); *but see Jacobs v. Hanwha Techwin Am., Inc.*, 2021 WL 3172967, at *3 (N.D. Ill. July 27, 2021) (dismissing Section 15(a) claim where plaintiff failed to "provide any factual allegations that plausibly establish that defendant exercised control over plaintiff's data or otherwise held plaintiff's data at its disposal").

Here, at this stage of the litigation, the Court must accept the facts as pleaded in Plaintiff's complaint as true. Plaintiff alleges that Defendants obtain the facial scan data from

Take-Two's servers and convert the data into face geometry on Defendants' servers utilizing Defendants' cloud-computing power. (*See* Compl. at ¶¶ 16, 106, 111.) Plaintiff further alleges that once Defendants create the face geometry, they disseminate it across their server infrastructure and otherwise store it on each server as it is transmitted back to the user. (*See id.* at ¶¶ 107-117.) In short, Plaintiff alleges Defendants took certain actions—creating the face geometry and storing it on their servers—that would otherwise be impossible absent possession of the data. As a result, Plaintiff has plausibly alleged Defendants are in possession of D.M.'s biometric data. *See Naughton*, 2022 WL 19324 at *3.

Defendants point to the AWS Customer Agreement and "Data Privacy FAQ" as evincing their lack of control over D.M.'s biometric information. (Defs.' Reply at 3-4 (citing Defs.' Mot., Exs. A at 30 ("We will not access or use Your Content except as necessary to maintain or provide the Service Offerings, or as necessary to comply with the law or a binding order of a governmental body."), B at 49 ("As a customer, you maintain full control of your content that you upload to the AWS services under your AWS account.")).) To the contrary, these provisions instead indicate that Defendants maintain some form of possession of the data in their servers to access customer content when necessary to provide services or comply with the law. And despite Defendants' arguments that Take-Two owned the data containing D.M.'s biometric information, Defendants fail to demonstrate that BIPA's possession requirement requires exclusive access or control.

At a minimum, it is clear there are issues of fact as to what possession and/or control Defendants actually retain over data stored on their servers by their customers. But at this juncture, the Court finds that Plaintiff has adequately alleged that Defendants are in possession of Plaintiff's biometric data as contemplated under BIPA.

2.    Ripeness

Pursuant to Section 15(a), the retention and destruction policy an entity establishes must provide for the destruction of biometric identifiers within three years of the individual's last interaction with the entity or when the initial purpose for collecting or obtaining such identifiers has been satisfied, whichever is earlier. 740 ILCS 14/15(a). Defendants argue that Plaintiff's Section 15(a) claims are unripe because neither of the statutory conditions requiring the destruction of D.M.'s biometric information have been met. (Defs.' Mot. at 8-9.) Defendants argue that it is undisputed that three years have not yet passed since D.M. last played NBA 2K21 and that the purpose of the collection of D.M.'s biometric information remains ongoing because D.M. continues to play the NBA 2K21 using his customized player. (*Id.* at 9.) Defendants additionally respond that because Plaintiff's allegations go beyond Defendants' alleged failure to develop a policy—and instead extend to Defendants' failure to destroy biometric data in the timeframe set by BIPA—such claims remain unripe. (Defs.' Reply at 4-5.)

Plaintiff counters that the Section 15(a) claim is ripe because allegations of Defendants' possession of biometric data without a written retention or destruction policy plausibly suggests that Defendants violated Section 15(a) by failing to develop a policy in the first instance. (Pl.'s Resp. at 10-11.) Plaintiff additionally contends that Plaintiff's Section 15(a) claim as to the required destruction of biometric information was triggered because the purpose for collecting D.M.'s biometric information was satisfied "when the data was delivered to D.M." and that in any event, whether that purpose was in fact "satisfied" remains a factual question. (*Id.* at 12.)

Courts have generally held that Section 15(a) claims lack subject matter jurisdiction where brought earlier than the passing of three years since the individual's last interaction with the entity or where the purpose for collecting or obtaining the identifiers has been "satisfied." *See*

*Horn v. Method Prods., PBC*, 2022 WL 1090887, at *4 (N.D. Ill. Apr. 12, 2022) ("[Plaintiff's]
claim related to [Defendant's] alleged failure to destroy his biometric information is not yet ripe
for review because three years have not passed since his last interaction with [Defendant].");
*Kislov v. Am. Airlines, Inc.*, 2021 WL 4711741, at *4 (finding where collection of biometrics did
not occur more than three years prior to filing of the complaint, "[a]ny claim for unlawful
retention of biometric data is likely not yet ripe").

However, at least one court has found that ripeness challenges based on Section 15(a)'s
statutory obligations as to when an entity must destroy biometric information "[do not] make
much sense" because an alleged failure to establish a retention and destruction policy involves a
current violation, and not a future one. *Nseumen v. Dal Glob. Servs., Inc.*, 2021 WL 4728707, at
*2 (N.D. Ill. Oct. 11, 2021). Specifically, the court in *Nseumen* held that:

> [T]he fact that the [Section 15(a)] policy has to say something about destroying
> information no more than three years out doesn't suggest that the entity may wait
> those three years to establish its policy. The obligation under section 15(a) is, under
> the statutory language, a current obligation that applies to any entity collecting
> biometric data . . . Thus a claim regarding [defendant's] failure to establish a
> retention and destruction policy involves a current violation, not a potential future
> violation.

*Id.*

Here, Plaintiff has alleged that Defendants did not employ a written retention or
destruction policy (*see* Compl. at ¶¶ 19, 124, 171-72, 208-09), which Defendants do not dispute.
Because Defendants did not develop a policy, and thus could not comply with such a policy in
the first instance, Plaintiff's allegations that Defendants violated Section 15(a) by failing to
develop or comply with a written policy is ripe for adjudication. *See Nseumen*, 2021 WL
4728707 at *2; *see also Horn*, 2022 WL 1090887 at *4 (finding plaintiff's Section 15(a) claim as
to failure to develop and disclose a retention policy ripe based on defendant's alleged failure to

1    "develop a written policy establishing a schedule and guidelines for the permanent destruction of

2    biometric information").

3          Furthermore, though it is clear three years have not since passed since D.M.'s last

4    interaction with NBA 2K21, it is unclear at this early stage whether the "initial" purpose for

5    collecting D.M.'s biometric information was "satisfied" for Plaintiff's Section 15(a) claim

6    premised on Defendants' alleged failure to destroy biometric information. Relevant to this issue,

7    Plaintiff has alleged that: (1) D.M. played NBA 2K using his customized player "on multiple

8    occasion(s) throughout 2021"; and (2) every time D.M. played a game with his customized

9    player, Defendants obtained, delivered, and stored his face geometry or biometric information.

10   (Compl. at ¶¶ 149-50.) Plaintiff's complaint further alleges that the customized player with the

11   face geometry is not stored locally on the video game console's hard drive, but rather the gaming

12   platform's random-access memory during gameplay. (*Id.* at ¶ 114.) Once gameplay ends,

13   Plaintiff alleges that the customized player and face geometry are stored on Defendants' servers,

14   and therefore, the face geometry and/or other associated data must be re-delivered from

15   Defendants each time the user wants to play NBA 2K using the previously customized player.

16   (*Id.* at ¶¶ 115-17.)

17         Based on Plaintiff's allegations, there is, at a minimum, a factual question as to if the

18   "initial" purpose was "satisfied" when the facial geometry was delivered to D.M. to create his

19   customized player; or whether that purpose remains ongoing because D.M. continues to play

20   NBA 2K21 using his customized player. Therefore, dismissal of Plaintiff's Section 15(a) claim

21   premised on Defendants' alleged failure to destroy his biometric information on ripeness grounds

22   would be premature at this time.

23

1

       *ii.*      *Section 15(b)*

2

     Next, Defendants argue that Plaintiff fails to allege that Defendants took an "active step"

3

to collect, capture, purchase, or otherwise obtain biometric data for Section 15(b) requirements to

4

apply. (Defs.' Mot. at 9-11.) Defendants contend that the alleged collection of D.M.'s biometric

5

information resulted from D.M's use of the App maintained and operated by Take-Two, not

6

Defendants. (*Id.* at 11.) Plaintiff argues that Section 15(b) "do[es] not inherently require

7

affirmative action," but encompasses passive possession of biometric information. (Pl.'s' Resp.

8

at 13-14.) Plaintiff alternatively argues that Defendants' creation of face geometry and/or

9

dissemination and storage of it constitute any requisite affirmative actions. (*Id*. at 14-15.)

10

     Section 15(b) provides that:

11

     No private entity may collect, capture, purchase, receive through trade, or
     otherwise obtain a person's or a customer's biometric identifier or biometric

12

     information, unless it first:

13

     (1) informs the subject or the subject's legally authorized representative in writing
     that a biometric identifier or biometric information is being collected or stored;

14

15

     (2) informs the subject or the subject's legally authorized representative in writing
     of the specific purpose and length of term for which a biometric identifier or
     biometric information is being collected, stored, and used; and

16

17

     (3) receives a written release executed by the subject of the biometric identifier or
     biometric information or the subject's legally authorized representative.

18

19

740 ILCS 14/15(b). Unlike Sections 15(a), (c), (d), and (e) of BIPA—all of which apply to

20

entities "in possession of" biometric data—Section 15(b) applies to entities that "collect, capture,

21

purchase, receive through trade, or otherwise obtain" biometric data.[2] *See* 740 ILCS 14/15(a)-(e).

22

23

---

[2] In addition, the Court notes that Section 15(a) imposes different obligations than Section 15(b). Section 15(a) requires entities to develop and publish written policies regardless of whether they obtained biometric data *before or after* BIPA's effective date, while Section 15(b) imposes notice and consent obligations on entities that came into possession of such data *after* BIPA's effective date. *See Figueroa,*

1    "Otherwise obtain" is not defined by BIPA. *See* 740 ILCS 14/10. "Obtain" is defined as

2    "[t]o come into the possession of," or "to get, acquire, or secure." *Vance v. Amazon.com Inc.*

3    ("*Vance I*"), 525 F.Supp.3d 1301, 1312 (W.D. Wash. 2021) (citing *Obtain*, Oxford English

4    Dictionary). "Otherwise" means "[i]n a different manner; in another way, or in other ways." *Id.*

5    (citing Black's Law Dictionary 1101 (6th ed. 1990); Oxford English Dictionary). Accordingly,

6    this Court has found that "in context, [Section] 15(b) is triggered whenever a private entity

7    acquires biometric data in the enumerated ways—collecting, capturing, purchasing, receiving

8    through trade—or gets the biometric data in some other way." *Id.*

9    Courts interpreting the meaning of "otherwise obtain" have held that possession alone is

10   not enough to subject an entity to Section 15(b). *See Heard*, 440 F.Supp.3d at 966 (the argument

11   that Section 15(b) requires more than mere possession "finds ample support in the case law");

12   *see also Namuwonge*, 418 F.Supp.3d at 286 (because "[t]he Illinois legislature used the term

13   possession in certain sections of BIPA . . . but chose not to include possession in [Section]

14   15(b)," there "is a difference between possessing and collecting biometric information."). Thus,

15   courts analyzing Section 15(b) claims have found that a defendant entity must take active steps

16   to collect, capture, or otherwise obtain the plaintiff's biometric information to sufficiently allege

17   a Section 15(b) claim. *See, e.g.*, *Vance I*, 525 F.Supp.3d at 1312-13 (finding plaintiff sufficiently

18   alleged Amazon otherwise obtained biometric data by applying for and downloading a data set

19   from IBM); *Heard*, 440 F.Supp.3d at 966 ("[F]or Section 15(b)'s requirements to apply, an entity

20

21   454 F.Supp.3d at 784 (citing 740 ILCS 14/15(a) (covering "[a] private entity *in possession of* biometric
     identifiers or biometric information") (emphasis added), *with* 740 ILCS 14/15(b) ("No private
22   entity *may* collect, capture, purchase, ... or otherwise obtain a person's . . . biometric identifier or
     biometric information . . ." (emphasis added); *see also* 740 ILCS 14/99 ("This Act takes effect upon
23   becoming law.").)

1    must, at a minimum, take an active step to 'collect, capture, purchase, receive through trade, or

2    otherwise obtain' biometric data.").

3          Here, Plaintiff has adequately alleged that Defendants otherwise obtained D.M.'s

4    biometric data for a Section 15(b) claim. First, contrary to Defendants' argument, Plaintiff's

5    allegations plead an "active step." Plaintiff's complaint alleges that Defendants uploaded or

6    otherwise stored the biometric data on their servers. (*See* Compl. at ¶¶ 84, 106.) Moreover,

7    Plaintiff alleges Defendants constructed the facial geometry on their own servers through the use

8    of Defendants' cloud computing services. (*See id.* at ¶¶ 107-111.) To do any of these things,

9    Defendants "necessarily first had to 'obtain' the data." *See Figueroa v. Kronos Inc.*, 454

10    F.Supp.3d 772, 784 (N.D. Ill. 2020).

11          Defendants' contention that Section 15(b) only applies if they themselves acquired the

12    biometric data directly from D.M. also finds no support in the case law.[3] Section 15(b) does not

13    add any limitation to who or where the information is collected or obtained from, stating only

14    that the protections are triggered when an entity collects biometric data, regardless of how that

15    collection occurs. *See Vance I*, 525 F.Supp.3d at 1313 (citing 740 ILCS 14/15(b)). Like the

16    situation in *Vance I*, "[i]n essence, Amazon wishes the court to read the limitation 'directly from

17    the person' into Section 15(b) where none exists." *Id.*

18

19

20    _____

21    [3] It appears Defendants made nearly identical claims in *Vance I*. *Compare Vance I*, 525 F.Supp.3d at
1313-14 ("Nor will the court adopt Amazon's proposal that [Section] 15(b) only applies when an entity
acquires biometric data "'directly from any individual.'") *with* Defs.' Mot. at 9-11. ("The alleged

22    collection of D.M.'s biometric information resulted from D.M.'s use of the NBA2K App. Take-Two—not
AWS or Amazon—maintained and operated the App, including with regard to collecting data . . . Because
AWS and Amazon did not collect, capture, purchase, receive through trade, or otherwise obtain D.M.'s

23    alleged biometrics—and the Complaint does not allege any of these things—Plaintiff's Section 15(b)
claims fail as a matter of law.").

1    Finally, Defendants' argument on whether BIPA remains applicable to third-party

2    vendors remains unavailing.[4] Defendants' cited cases concern situations where the plaintiffs

3    failed to sufficiently plead the role of the third-party vendor, and therefore, warranted dismissal

4    of the third party on those grounds. *See Namuwonge*, 418 F.Supp.3d at 286 (plaintiff alleged that

5    only the employer, not the third-party vendor, obtained her fingerprints); *Heard*, 440 F.Supp.3d

6    at 966-67 (dismissing Section 15(b) claim where plaintiff failed to provide facts detailing how

7    third-party vendor actively collected his biometric data). Conversely, Plaintiff here has alleged

8    that Defendants store the biometric data on their servers and that the biometric data is used by

9    Defendants to construct facial geometry before being ultimately transmitting it to Take-Two.

10    (*See* Compl. at ¶¶ 84, 106-111.) Plaintiff's Section 15(b) claim should not be dismissed.

11        *iii.*           Section 15(c)

12    Defendants argue that Plaintiff's Section 15(c) claim fails because Plaintiff fails to allege

13    facts demonstrating that AWS engaged in a direct sale of biometric data or that D.M.'s biometric

14    data is integrated into Defendants' service such that Section 15(c) applies. (Defs.' Mot. at 12-13.)

15    Defendants argues that they do not profit from D.M.'s biometric data because Take-Two creates

16    the biometric data, and because Plaintiff fails to allege that Defendants received any money from

17    Take-Two in exchange for transferring biometric data as opposed to payments for cloud

18    computing services generally. (*Id.*)

19

20

---

21    [4] Courts are split on whether third-party vendors who provide biometric technology, such as biometric
      operating systems, must comply with Section 15(b). *See Vance I*, 525 F.Supp.3d at

22    1313-14 (acknowledging split but concluding Amazon, as a third-party vendor, owed a Section 15(b) duty
      to plaintiffs because it took an active step to obtain biometric data); *Figueroa*, 454 F.Supp.3d at 779

23    (concluding third-party manufacturer of biometric time clocks owed Section 15(b) duty to their
      customers' employees).

1    Plaintiff responds that Defendants share and allow access to the biometric data and

2    computing services to Take-Two for a fee, and that if payment stops, Take-Two's access stops.

3    (Pl.'s Resp. at 15-16.) Plaintiff cites AWS's Customer Agreement, which provides Take-Two's

4    "right to access or use" the data in Defendants' possession will be suspended if it breaches its

5    payment obligation. (Pl.'s Resp. at 16 (citing Defs.' Mot., Ex. A at 32-33).) Thus, Plaintiff

6    argues that Defendants violated Section 15(c) because they shared or gave access to biometric

7    data, namely Defendants' created face geometry, in exchange for something of value. (*Id.*)

8    Section 15(c) prohibits any private entity "in possession of a biometric identifier or

9    biometric information" from "sell[ing], leas[ing], trad[ing], or otherwise profit[ing] from a

10   person's . . . biometric identifier or biometric information." 740 ILCS 14/15(c). Section 15(c)'s

11   first three verbs—"sell," "lease," and "trade"—all contemplate a transaction in which an item is

12   given or shared in exchange for something of value. *Vance v. Amazon.com* ("*Vance II*"), 534

13   F.Supp.3d 1314, 1321-22 (W.D. Wash. 2021) (citations omitted). "In the context of the

14   enumerated terms, 'otherwise profit' encompasses commercial transactions—such as a sale,

15   lease or trade—during which the biometric data is transferred or shared in return for some

16   benefit." *Id.* at 1322.

17   As a result, Section 15(c) applies to transactions with two components: "(1) access to

18   biometric data is shared or given to another; and (2) in return for that access, the entity receives

19   something of value." *Vance II*, 534 F.Supp.3d at 1322. The first component is satisfied where the

20   biometric data is the product of the transaction, such as in a direct sale, or where the biometric

21   data is necessarily integrated into a product such that consumers gain access to the data by using

22   the product or service. *Id.* The second component is satisfied where the "commercial

23   dissemination of biometric data" is made "for some sort of gain, whether pecuniary or not." *Id.*

1    In *Vance II*, plaintiffs alleged that Amazon's facial recognition technology,

2  "Rekognition" allowed users to match new images of faces with known facial images based on

3  visual geometry and that the services and its face-matching feature were incorporated into

4  Amazon's products. 534 F.Supp.3d at 1324. Because the plaintiffs' allegations supported an

5  inference that the biometric data was itself so incorporated into Amazon's product that, by

6  marketing the product, Amazon was commercially disseminating the biometric data, this Court

7  found that Amazon received some benefit from the biometric data through increased sales of its

8  facial recognition technology. *Id.*

9    Similarly, in *Flores v. Motorola Sols., Inc.*, plaintiffs alleged that the defendant used

10  biometric data to develop a database that allowed customers to search for facial matches. 2021

11  WL 232627 at *3 (N.D. Ill. Jan. 8, 2021). Thus, using the product—"compar[ing] novel images

12  to the database images to find facial matches"—necessarily allowed customers to gain access to

13  the underlying biometric data. *See id.* In finding that "biometric data is a necessary element to

14  Defendant's business model," the court declined to find that the activity did not constitute

15  "otherwise profiting from" biometric data. *Id.*

16    On this issue, Defendants' position is understandable. It appears Defendants are paid to

17  provide cloud computing services regardless of the data involved, and unlike *Vance II* or *Flores*,

18  there is not a direct benefit to Defendants' services due to the integration of biometric data as a

19  necessary element of the service. Nevertheless, Plaintiff has clearly pleaded that access to D.M.'s

20  biometric data was shared or disseminated to Take-Two, and that in return for that access,

21  Defendants received something of value—namely payment from Take-Two. *See Vance II*, 534

22  F.Supp.3d at 1322. More specifically, Plaintiff plausibly alleges that Defendants: (1) retrieve the

23  photographs from Take-Two's servers; (2) utilize the photographs and related data to create face

geometry— the biometric identifier at issue in the case —on their servers; and (3) that the face geometry is then shared with Take-Two for a fee in order to use Defendants' cloud computing services. (*See* Compl. at ¶¶ 16, 83-84, 106, 111, 187-188, 224-225.)

As such, Plaintiff's allegations at this stage plausibly allege that Defendants' cloud computing services shared access to D.M.'s biometric data in exchange for monetary payment for their services. *See Vance II*, 534 F.Supp.3d at 1324 ("[B]ecause Plaintiffs' factual allegations allow for the reasonable inference that selling Amazon's products necessarily shares access to the underlying biometric data in exchange for some benefit to Amazon, the court concludes that Plaintiffs have sufficiently stated a claim under [Section] 15(c)."); *see also Flores*, 2021 WL 232627 at *3. Despite Defendants' position, it is also clear that Section 15(c)'s plain language does not require a direct sale of biometric data. *See* 740 ILCS 14/15(c); *Vance II*, 534 F.Supp.3d at 1322 ("Section 15(c) . . . [prohibits] a market in the transfer of biometric data, whether through a direct exchange—sale, lease or trade—*or some other transaction where the product is comprised of biometric data*." (emphasis added)). Plaintiff's Section 15(c) claim should not be dismissed.

> iv.    *Section 15(d)*

Defendants argue that Plaintiff's Section 15(d) claim fails because Plaintiff fails to allege "commercial dissemination of biometric data for some sort of gain" to a third party. (Defs.' Mot. at 13-14.) Defendants additionally contend that D.M. consented to "disclosure" to himself of his data upon his request for that data. (*Id.* at 15.) Plaintiff argues that she has properly alleged Defendants disseminated D.M.'s biometric data every time they moved it to, and stored it in, a different server in a different location across the nation. (Pl.'s Resp. at 18.) Plaintiff argues that each time the biometric data passes through and is stored in a new location, it is disclosed or

1    disseminated to other entities—that is at a minimum, to, through, or among AWS and

2    Amazon.com. (*Id.* at 19.)

3    Section 15(d) disallows any private entity "in possession of a biometric identifier or

4    biometric information" to "disclose, redisclose, or otherwise disseminate a person's . . .

5    biometric identifier or biometric information" unless the subject of the biometric identifier or

6    information "consents to the disclosure or redisclosure." 740 ILCS 14/15(d). A plaintiff must

7    only plead "specific, plausible dissemination" to proceed on a Section 15(d) claim. *See Cothron*

8    *v. White Castle System, Inc.*, 467 F.Supp.3d 604, 618 (N.D. Ill. 2020); *Naughton*, 2022 WL

9    19324 at *4 (finding plaintiff pleaded "plausible dissemination" by alleging Amazon collected

10    his biometric information and disclosed that information to "other Amazon entities"

11    and "third-party biometric device and software vendor(s)").

12    Here, Plaintiff has pleaded plausible dissemination of biometric information. Plaintiff

13    alleges Defendants disseminated D.M.'s biometric data when they moved it to, or stored it in,

14    different server locations across Defendants' server infrastructure. (*See* Compl. at ¶¶ 55-56 ("The

15    Origin Server, which may or may not be owned by AWS/Amazon, sends the content to the AWS

16    Regional Edge Cache, which sends the content to the AWS Edge Location. CloudFront then

17    delivers the content to the end-user from the Edge Location."), 71-73 (alleging exchange of data

18    between gaming platform, "Edge" and "Regional Edge Cache" data server locations, and Origin

19    Server as needed). Furthermore, Plaintiff has alleged that Defendants disseminated the biometric

20    information to the user's gaming platform, which would share it with Take-Two and/or the

21    gaming platform's servers. (*See id.* at ¶¶ 105-111 (alleging Defendants transmit the constructed

22    face geometry via CloudFront through Defendants' "Edge" and "Regional Edge Cache" date

23    server locations to deliver it to user's gaming platform), 115-117 ("If the Face Geometry and

associated data is not already stored in the Edge Location, the Edge Location either obtains the

Face Geometry and associated data from the Regional Edge Cache location, or from the Origin

Server, and the Edge Location forwards the Face Geometry and associated data to the user's

Platform."), 197, 234.)

While third-party disclosure may satisfy the requirements to state a Section 15(d) claim,

Section 15(d) claims do not necessarily require third-party disclosure. *See Roberson v. Maestro*

*Consulting Servs. LLC*, 507 F.Supp.3d 998, 1010 (S.D. Ill. 2020) (finding plaintiffs adequately

alleged Section 15(d) claim where defendants "disclosed, redisclosed, or disseminated the

biometric information of plaintiffs and the class members to, through, and/or among others,

including but not limited to *other [Defendants'] entities or persons associated with*

*[Defendants]*." (emphasis added)); *Naughton*, 2022 WL 19324 at *4. Here, Plaintiff has

plausibly alleged dissemination by indicating Defendants are in possession of D.M.'s facial

geometry and disclosed that data to "other Amazon entities," which include Defendants based on

their shared infrastructure, in addition to Take-Two.

Section 15(d) "prohibits private entities from disclosing an individual's biometric data

without their consent." *Twin City Fire Ins. Co. v. Vonachen Servs., Inc.*, 2021 WL 4876943, at

*8 (C.D. Ill. Oct. 19, 2021). Though Defendants contend that D.M. consented to any

dissemination, there is no indication that D.M. gave consent from the face of the complaint. (*See*

Compl. at ¶¶ 198, 235.) Moreover, BIPA likely requires the consent of D.M.'s "legally

authorized representative" because D.M. is a minor. *See* 740 ILCS 14/15(d)(1).

Finally, Defendants' argument that they are not in possession of D.M.'s biometric data

largely reasserts Defendants' position addressed in Section 15(a). As noted above, Plaintiff has

plausibly alleged possession of D.M.'s biometric data, and in any event, there remain issues of

1  fact as to what possession and/or control Defendants actually retain over data stored on their

2  servers. Plaintiff's Section 15(d) claim should not be dismissed.

3          **E.      Choice of Law and Unjust Enrichment**

4          A federal court sitting in diversity applies the choice-of-law rules of its forum state to

5  determine which substantive law controls. *Kohlrautz v. Oilmen Participation Corp.*, 441 F.3d

6  827, 833 (9th Cir. 2006). Washington employs a two-step approach. *Kelley v. Microsoft Corp.*,

7  251 F.R.D. 544, 550 (W.D. Wash. 2008). First, the court must determine whether "an actual

8  conflict between Washington and the other applicable state law exists." *Id.* (citation omitted).

9  Where there is an actual conflict, the court must then next determine which state has the "most

10  significant relationship" to the action. *Id.*

11         In *Vance I*, this Court found that an actual conflict exists between Washington and

12  Illinois law on a claim of unjust enrichment in the context of a BIPA lawsuit "over whether

13  Plaintiffs must plead that they suffered an economic expense distinct from a privacy harm." 525

14  F.Supp.3d at 1315. In that case, the Court found that applicable Washington and Illinois law

15  would produce different outcomes because alleging a non-economic loss—such as a loss of

16  privacy—is insufficient for an unjust enrichment claim under Washington law. *Id.* (citing

17  *Cousineau v. Microsoft Corp.*, 992 F.Supp.2d 1116, 1130 (W.D. Wash. 2012) ("Washington

18  courts have not applied the doctrine of unjust enrichment outside the context of an 'expense'

19  stemming from some tangible economic loss to a plaintiff.")). But under Illinois law, "the

20  assertion that plaintiffs are 'exposed to a heightened risk of privacy harm' and 'have been

21  deprived of their control over their biometric data' sufficiently states an unjust enrichment

22  claim." *Id.* (quoting *Vance v. IBM Corp.*, 2020 WL 5530134, at *5 (N.D. Ill. Sept. 15, 2020)).

23

Consequently, under the first step, the Court concurs with *Vance I's* conclusion that an actual conflict exists between Washington and Illinois law as to unjust enrichment.

In determining the "most significant relationship," Washington courts employ a two-step analysis. *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 180 Wn.2d 954, 968 (2014). First, courts evaluate the parties' contacts with each jurisdiction that are relevant to the cause of action. *Id.* Second, courts consider the interests and public policies of the relevant jurisdictions. *Id.*

Choice of law for unjust enrichment claims is governed by Restatement (Second) of Law on Conflict of Laws Section 221 (Restitution). *See Vance II*, 534 F.Supp.3d at 1325 (citing Restatement (Second) of Law on Conflict of Laws § 221(1) cmt. a (Am. Law Inst. 1971) ("The rule of this Section applies to claims, which are based neither on contract nor on tort, to recover for unjust enrichment.")). In determining which jurisdiction has the most significant relationship to the dispute under Section 221, the Court must consider the principles laid out in Section 6 of the Restatement:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

*Vance II*, 534 F.Supp.3d at 1325 (citing Restatement (Second) of Law on Conflict of Laws § 6(2) (Am. Law Inst. 1971)). In applying the Section 6 principles, courts are to consider the following contacts:

> (a) the place where a relationship between the parties was centered, provided that the receipt of enrichment was substantially related to the relationship, (b) the place where the benefit or enrichment was received, (c) the place where the act conferring the benefit or enrichment was done, (d) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (e) the place where a

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

physical thing, such as land or a chattel, which was substantially related to the enrichment, was situated at the time of the enrichment.

*Id.* (citing Restatement (Second) of Law on Conflict of Laws § 221(2) (Am. Law Inst. 1971)).

In *Vance II*, this Court found that Illinois had the most significant relationship to the plaintiffs' unjust enrichment claim. Of note, the *Vance II* decision cited that the place where the act conferring the benefit occurred being Illinois, and the grouping of plaintiffs' domicile, residence, and Amazon's business in Illinois, as leaning most prominently toward application of Illinois law. 534 F.Supp.3d at 1326-27. Because Illinois had the most significant relationship per the contacts analysis in Restatement Section 221, and the general principles listed in Section 6, this Court found that the plaintiffs sufficiently pleaded an unjust enrichment claim under Illinois law. *Id.* at 1329.

Plaintiff responds that here, like *Vance II*, the contacts in this case weigh in favor of the application of Illinois law, and thus, a finding that Plaintiff has plausibly alleged an unjust enrichment claim. (Pl.'s Resp. at 20.) Specifically, Plaintiff notes that to the extent the relationship between D.M. and Defendants was centered in any location, it was Illinois, that it was Illinois where D.M.'s biometric data was stored and disseminated, and that Illinois is where any benefit was received. (*Id.*) Plaintiff additionally argues that "even if the contacts were balanced, Illinois has the greater interest in determining this particular issue." (*Id.* at 22 (citing *Vance II*, 534 F.Supp.3d at 1328-29).)

Defendants counter that application of the "most significant relationship test" to determine choice of law results in an application of Washington, not Illinois law. (Defs.' Reply at 9.) Defendants cite that where the alleged benefit was received is the factor "of greatest importance" under a Section 221 analysis, and that here, any profit Defendants allegedly obtained would have been in Washington. (*Id.* at 10.) Defendants further argue that regardless of

whether Washington or Illinois law is applied, Plaintiff fails to state an unjust enrichment claim because Plaintiff fails to allege that Defendants received a benefit. (*Id.*)

Here, based on the "most significant relationship" analysis, the application of Illinois law to Plaintiff's unjust enrichment claim is appropriate. Under the first factor, Illinois appears to be the place where the relationship between the parties was centered because that is where D.M. took the facial scans and uploaded them. However, as D.M. did not contract with Defendants, this factor is to be given little weight or viewed neutrally. *See Vance II*, 534 F.Supp.3d at 1326 (citing *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F.Supp.3d 1140, 1154 (W.D. Wash. 2017) (finding first factor bears "little, if any, weight" when parties did not contract)).

The second factor, where the benefit was received, also receives little weight or weighs neutrally. Defendants argue that any profit they allegedly obtained from Plaintiff would have been realized in Washington because that is where Defendants are based. (Defs.' Reply at 10.) However, like in *Vance II*, the central benefit received by Defendants stemmed from D.M. providing images of his face to allow for the creation of the facial geometry, which occurred in Illinois (Compl. at ¶¶ 154-155). *See* 534 F.Supp.3d at 1326. And though Defendants are based in Washington, "Amazon's nation-wide reach . . . supports the inference that the place where the benefit was received may span many states." *See id*. Because Amazon operates nationwide, and Washington remains tangential to the specific occurrence at issue in this action, the Court finds this factor weighs neutrally. *See id.* (citing Restatement § 221(2) cmt. d) (assigning factor "little or no weight" when place where benefit was received "bears little relation to the occurrence . . . or where this place cannot be identified").

Under the third factor, the place where the act conferring the benefit occurred is to be given "[p]articular weight" if it differs from the place where the benefit was received or if the

1    place where the benefit was received cannot be identified. Restatement (Second) of Law on

2    Conflict of Laws § 221(2) cmt. d. Here, Plaintiff conferred any benefit to Defendants in Illinois

3    because that is where he uploaded his facial scans. (*See* Compl. at ¶¶ 154-155.) "Although there

4    are other acts in the chain of events leading to Amazon benefiting off of Plaintiffs' biometric

5    data . . . the core of the benefit lies in Plaintiffs providing images of their faces." *See Vance II*,

6    534 F.Supp.3d at 1326. In addition, this factor is assigned enhanced weight because of the

7    neutrality of the place where the benefit was received under the second factor. *Id.*

8          Under the fourth factor, the domicile, residence, and place of business of the parties,

9    weighs toward the application of Illinois law. Despite Defendants being headquartered

10   in Washington (Compl. at ¶¶ 3-4), "[t]he fact that one of the parties is domiciled in a particular

11   state is of little significance" alone. *See Vance II*, 534 F.Supp.3d at 1327 (citing *Veridian*, 295

12   F.Supp.3d at 1154; Restatement (Second) of Law on Conflict of Laws § 221(2) cmt. d ("The fact

13   . . . that one of the parties is domiciled . . . in a given state will usually carry little weight of

14   itself.")). The importance of the domicile, residence, and place of business of the parties instead

15   "depends largely upon the extent to which they are grouped with other contacts." Restatement

16   (Second) of Law on Conflict of Laws § 221(2) cmt. d. Here, the contacts in this matter are

17   grouped in Illinois as that is where Plaintiff resides and where Defendants conducted the relevant

18   business related to the enrichment at issue. *See Vance II*, 534 F.Supp.3d at 1327. Like *Vance II*,

19   aside from Defendants' headquarters, the allegations in the instant matter largely do not concern

20   Washington.

21         Finally, under the fifth factor, where the "physical thing which was substantially related

22   to the enrichment was situated at the time of enrichment" weighs neutrally. The allegations in

23   this matter center around non-tangible biometric data. *See Vance II*, 534 F.Supp.3d at 1326.

1    In whole, the Court finds that three of the factors weigh neutrally. Because the third and

2    fourth factor largely tip toward the application of Illinois law, the Court finds that the parties'

3    contacts per Restatement Section 221 in this case advise toward application of Illinois law to

4    Plaintiff's unjust enrichment claim under the first step.

5    In considering the interests and public policies of the relevant jurisdictions, the Court

6    finds that application of Illinois law over Washington law is also appropriate because

7    "[a]pplication of [Illinois's] unjust enrichment law, which recognizes privacy harms, aligns with

8    and strengthens Illinois's general regulatory scheme regarding privacy interests." *Vance II*, 534

9    F.Supp.3d at 1328. Specifically, as noted in *Vance II*:

10   > Illinois made clear through BIPA that it has substantial interest in protecting its
11   > residents' biometric data, even if the harm is inflicted by an out-of-state corporation
     > . . . Indeed, Illinois's recognition of both the role of major national corporations as
12   > well as the unknown nature of the full ramifications of biometric technology
     > underscores Illinois's great interest in protecting its citizenry against a multitude of
13   > harms stemming from a privacy violation, including if a corporation unjustly
     > enriches itself off of Illinois residents' biometric data.

14   *Id.* at 1327 (citing *In re Facebook Biometric Info. Priv. Litig.*, 185 F.Supp.3d 1155, 1169-70

15   (N.D. Cal. 2016)). Furthermore, the Court finds that Washington's interest in the instant matter is

16   relatively minimal due to the lack of any Washington connection to Plaintiff's allegations outside

17   of Defendants' headquarters. BIPA's provision of a private cause of action further emphasizes

18   Illinois's interest as Washington's biometric protection statute does not create a private cause of

19   action. *See* RCW 19.375.030 ("This chapter may be enforced solely by the attorney general

20   under the consumer protection act."). Consequently, application of Washington law would cause

21   Illinois to suffer greater impairment of its policies than if Illinois law is applied. *See Vance II*,

22   534 F.Supp.3d at 1328 (citing *In re Facebook*, 185 F.Supp.3d at 1170).

23

1    Under an application of Illinois law to the instant matter, because Plaintiff has alleged

2    that Defendants profited off of Plaintiff and Class Members' biometric data, while exposing

3    Plaintiff and Class Members to a heightened risk of privacy harm and depriving them of control

4    of their biometric data (*see* Compl. at ¶ 241), Plaintiff has sufficiently alleged an unjust

5    enrichment claim.[5] *See Vance II*, 534 F.Supp.3d at 1328 (quoting *IBM Corp.*, 2020 WL 5530134

6    at *5). Accordingly, Plaintiff's unjust enrichment claim should not be dismissed.

## IV.    CONCLUSION

8    For the forgoing reasons, the Court recommends that Defendants' Motion (dkt. # 18) be

9    DENIED. A proposed Order accompanies this Report and Recommendation.

10    Objections to this Report and Recommendation, if any, should be filed with the Clerk and

11    served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and

12    Recommendation is signed. Failure to file objections within the specified time may affect your

13    right to appeal. Objections should be noted for consideration on the District Judge's motions

14    calendar for the third Friday after they are filed. Responses to objections may be filed within

15    **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be

16    ready for consideration by the District Judge on **June 10, 2022**.

17    The Clerk is directed to send copies of this Order to the parties and to the Honorable

18    Tana Lin.

19    \\

20    \\

21

---

22    [5] Defendants additionally argue that: (1) that the unjust enrichment claim must be dismissed because
Plaintiff's BIPA claims should be dismissed; and (2) unjust enrichment is not available to Plaintiff as a
claim because Plaintiff has a statutory remedy. (Defs.' Mot. at 16.) But as explained above, the Court
23    finds Plaintiff's BIPA claims survive. Furthermore, Plaintiff may plead an unjust enrichment claim in the
alternative. *See Vance II*, 534 F.Supp.3d at 1328 n.7 (citing Fed. R. Civ. P. 8(e)(2); *Quadion Corp. v.
Mache*, 738 F.Supp.270, 278 (N.D. Ill. 1990)).

Dated this 24th day of May, 2022.

MICHELLE L. PETERSON
United States Magistrate Judge