1

2

3

4

5

6

7

8
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
9
AT SEATTLE

10

11
ANN MAYHALL, on behalf of her Minor
Child, D.M., individually and on behalf of
12
all others similarly situated,

13
                    Plaintiff,
          v.
14
AMAZON WEB SERVICES, INC. and
AMAZON.COM, INC.,
15

16
                    Defendants.

17

CASE NO. 2:21-cv-01473-TL

ORDER ADOPTING REPORT AND
RECOMMENDATION

(FILED UNDER SEAL)

18          This matter comes before the Court on the Report and Recommendation of United States

19   Magistrate Judge Michelle L. Peterson ("R&R") (Dkt. No. 87) on Defendants Amazon Web

20   Services Inc. ("AWS") and Amazon.com, Inc.'s Motion to Dismiss First Amended Complaint

21   (Dkt. No. 78). The Court has reviewed the R&R, Defendants' objections to the R&R (Dkt. Nos.

22   92 (sealed), 93), Plaintiff's response to Defendants' objections (Dkt. Nos. 98, 99 (sealed)), and

23

24

1  the remaining record.[1] The Court has also reviewed the transcript of the oral argument before

2  Judge Peterson (Dkt. Nos. 89 (sealed), 109) and finds another oral argument unnecessary (*see*

3  LCR 7(b)(4)). For the reasons stated in this Order, the Court ADOPTS the R&R and OVERRULES

4  the objections.

## I.    BACKGROUND

6      Plaintiff Ann Mayhall initially filed this case on behalf of her minor child, D.M. Dkt.

7  No. 1 at 1. The First Amended Complaint ("FAC") replaces Ann Mayhall with Dominic

8  Mayhall, her child, who is now an adult. *See* Dkt. Nos. 72, 73 (sealed). However, the core of this

9  case remains the same: *i.e.*, what involvement Defendants AWS and Amazon.com, Inc.[2] have

10  with respect to the biometric data created by players of NBA 2K, a basketball video game

11  published by Take-Two Interactive Software, Inc. ("Take-Two") and its subsidiary 2K Games

12  Inc. Dkt. No. 93 ¶¶ 8–21, 132–65. The Court assumes familiarity with the detailed facts as

13  described in the R&R. Dkt. No. 87 at 2–4.

14      In brief, the relevant facts for the purposes of this Order (as alleged in Plaintiff's

15  Complaint) are as follows. Plaintiff alleges that Take-Two utilizes Amazon services for, *inter*

16  *alia*, "servers, computing, hosting, storage, and delivery of its games and player data to Internet-

17  connected gaming platforms such as Xbox, PlayStation, Nintendo, and Personal Computers.

18  Dkt. No. 72 ¶ 9. Players of NBA 2K, such as Plaintiff, take and scan multiple photos of their

19  faces on the Take-Two app and upload those images to a Take-Two and/or 2K Games server to

20  create a custom player bearing the user's face referenced in the FAC as a "MyPLAYER avatar."

21

---

22  [1] The Parties each filed a public, redacted version and a sealed version of their pleadings. The Court references the publicly filed version of the documents in the remainder of this Order.

23  [2] In a footnote in their objection, Defendants state that they have "repeatedly told Plaintiff that Amazon.com, Inc. is not a proper defendant." Dkt. No. 93 at 1 n.1. However, Defendants did not move to dismiss Amazon.com from the
24  FAC. Accordingly, the Court will not address this issue.

1    *Id.* ¶¶ 12–14. ███████████████████████████████████████████

2    ███████████████████████████████████████████ *Id.* ¶ 16. ████

3    █████████████████████████████████████████ *Id.* ¶ 18. ███████

4    █████████████████████████████████████████████████████████████

5    ███████████████████████████████████████████████████

6    ███████ *Id.* ¶ 21. ██████████████████████████████████

7    ████████████████████████████████████ *Id.* ¶¶ 20, 22.

8    ███████████████████████████████████████████████████

9    █████████████████████████████████████████████████████████████

10   █████████████████████████████████████████████████████████████

11   ██████████████ *Id.* ¶¶ 135–37. █████████████████████████████

12   █████████████████████████████████████████████████████████████

13   ███████████████████████████████████████████ *Id.* ¶¶ 140–42.

14   █████████████████████████████████████████████████████████████

15   █████████ *Id.* ¶¶ 144–46. CloudFront "speeds up distribution of content," "deliver[ing] content

16   to end users with lower latency" by using Amazon's worldwide network of servers called Edge

17   Locations and Regional Edge Caches. *Id.* ¶¶ 51, 52, 54, 62. ████████████████

18   █████████████████████████████████████████████████████████████

19   ████████████████████ *Id.* ¶ 148.

20       Defendants moved to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6).

21   Dkt. No. 78. Judge Peterson recommended that the motion to dismiss be denied, for the reasons

22   spelled out in the R&R. Dkt. No. 87. Defendants objected (Dkt. No. 93), and Plaintiff has

23   responded to Defendants' objections (Dkt. No. 98).

24

1                                    II.    LEGAL STANDARD

2     A.    **District Court Review of a Report and Recommendation**

3            A district court has jurisdiction to review a magistrate judge's report and

4     recommendation on dispositive matters. *See* Fed. R. Civ. P. 72(b). The district court "shall make

5     a de novo determination of those portions of the report or specified proposed findings or

6     recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ.

7     P. 72(b)(3) ( "The district judge must determine de novo any part of the magistrate judge's

8     disposition that has been properly objected to."). "The district judge may accept, reject, or

9     modify the recommended disposition; receive further evidence; or return the matter to the

10    magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *accord* 28 U.S.C. § 636(b)(1). A

11    party properly objects when the party files "specific written objections" to the report and

12    recommendation as required under Federal Rule of Civil Procedure 72(b)(2). Here, Defendant

13    filed timely objections to the report and recommendation, and Plaintiff filed a timely response to

14    the objections.

15    B.    **Motions to Dismiss**

16           A complaint must include "a short and plain statement of the claim showing that the

17    pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In reviewing a Rule 12(b)(6) motion to

18    dismiss, the Court takes all well-pleaded factual allegations as true and considers whether the

19    complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662,

20    678 (2009); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). The Court

21    "accept[s] as true all facts alleged in the complaint and construe[s] them in the

22    light most favorable to plaintiff[], the non-moving party.'" *DaVinci Aircraft, Inc. v. United*

23    *States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (quoting *Snyder & Assocs. Acquisitions LLC v.*

24    *United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)). While "[t]hreadbare recitals of the

1  elements of a cause of action, supported by mere conclusory statements" are insufficient, a claim

2  has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the

3  reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

4  672, 678.

5  **III.   DISCUSSION**

6  **A.   The BIPA Claims**

7      Plaintiffs allege that Defendants violated Illinois's Biometric Information Privacy Act

8  ("BIPA"), 740 Ill. Comp. Stat. 14/1 *et seq*. BIPA was enacted to help regulate "the collection,

9  use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and

10  information." *Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197, 1203 (Ill. 2019). BIPA

11  "imposes numerous restrictions on how private entities collect, retain, disclose and destroy

12  biometric identifiers, including . . . scans of . . . face geometry." *Id.* at 1199 (quoting 740 Ill.

13  Comp. Stat. 14/20).

14      **1.   Possession Under Sections 15(a) and 15(d)**

15      Both Sections 15(a) and (d) of BIPA regulate any private entity "in possession of

16  biometric identifiers or biometric information."[3] 740 Ill. Comp. Stat. 14/15(a) and (d). While

17  BIPA does not define "possession," *see* 740 Ill. Comp. Stat. 14/10, the Illinois Supreme Court

18  has held possession "occurs when a person has or takes control of the subject property or holds

19  the property at his or her disposal." *People v. Ward*, 830 N.E.2d 556, 560 (Ill. 2005). The R&R

20  found that Plaintiff plausibly alleged possession of biometric data because "the FAC alleges that

21  Defendants knowingly obtained users' face geometry data from Take-Two and that it remains in

22  their control as they disseminate and store it on their servers." Dkt. No. 87 at 9.

23  

24  [3] Defendants do not appear to dispute that the ███████████████ constitute biometric data or identifiers under BIPA. *See generally* Dkt. No. 93.

1    Defendants' main argument in their objection on this issue is that the FAC does not

2 allege they had control of any biometric data, relying heavily on their characterization of their

3 services as "merely **passive** cloud storage services, without having any . . . control over[ ]how

4 Take-Two used those services or what data they transmitted." Dkt. No. 93 at 5 (emphasis in

5 original). Defendants assert that "AWS is a passive cloud storage provider, storing or

6 transmitting data that Take-Two exclusively owns, controls, and chooses to upload." *Id.* at 10.

7    While Defendants' characterization makes it seem as if a third party took all the actions,

8 that is not what Plaintiff alleges in the FAC. As discussed in Section I, Plaintiff alleges that

9 ████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████████

16 ██████████████████████████████████ Dkt. No. 109 at 22:23–23:11. Key to

17 this Court's analysis is █████████████████████████████████████

18 ██████████████████████████████████████████████ *Id.* at 24:9–

19 13; *see also* Dkt. No. 72 ¶ 148.

20    Accepting the facts as pleaded and drawing all inferences in Plaintiff's favor on a motion

21 to dismiss, the Court finds that Defendants stored, at a minimum, ████████████████

22 ██████ so that they could cut down on the transmission latency and deliver that data quicker the

23 next time the game was played. In other words, ██████████████████████████

24 ████████████████████████████████████████████████████████████

1    ███████  ████████████████████████████████████████ These choices

2    resulted in an action taken solely by Defendants and not any third party. To do this, Defendants

3    had to "take[ ] control of the subject property or hold the property at his or her disposal." *Ward*,

4    830 N.E.2d at 560. The Court further agrees with the R&R's conclusion that Defendants'

5    customer agreements and policies do not negate the FAC's allegations. Dkt. No. 87 at 9.

6         Defendants cites in support of its position *Kyles v. Amazon Web Services, Inc.*, No. 2021-

7    CH-04026 (Ill. Cir. Ct. Jan. 4, 2023), filed at Docket Number 77-1. However, Defendants admit

8    that in that case, "a third party allegedly stored fingerprint data using AWS's cloud storage

9    service" so that Amazon's customer agreement conclusively established that it could not access

10   its customer's data. Dkt. No. 93 at 11. But here, the allegation in the FAC is that Defendants —

11   not a third party—chose to store the data on its servers. Defendant's reliance on *Street v. Lincoln*

12   *Safe Deposit Co.*, 254 U.S. 88 (1920), is similarly misplaced as Defendants admit that a third

13   party had "exclusive possession and control" of the liquor there. Dkt. No. 93 at 11. Defendants'

14   "passive storage" argument relies on a third party having exclusive control of the data, but that is

15   simply not what is alleged in the FAC. And Defendants' attempt to distinguish this case from

16   *Clark v. Microsoft Corp.*, 688 F. Supp. 3d 743, 745 (N.D. Ill. 2023), which is cited in the R&R

17   (Dkt. No. 87 at 9), similarly fails because as Defendants admit, Microsoft (as Defendants here)

18   "***exercised some degree of control*** over access to that data." Dkt. No. 93 at 12 (emphasis in

19   original) (quoting *Clark*, 688 F. Supp. 3d at 749). The same occurred in this case where,

20   accepting the allegations of the FAC as true, Defendants exercised some degree of control in

21   deciding both to retain the ████████ and where to store it on Defendants' servers.

22        At a minimum, and as pointed out in the R&R, "there are still issues of fact as to what

23   possession and control Amazon has over the data stored on its servers that cannot be decided at

1   the pleading stage." Dkt. No. 87 at 10. Therefore, the Court agrees with the conclusion in the

2   R&R that Plaintiff's Section 15(a) and (d) claims should not be dismissed.

3         **2.    The Requirement to Secure Informed Consent Under Section 15(b)**

4         Section 15(b) requires a person's informed consent and release before a private entity

5   collects, purchases, receives through trade, or otherwise obtains that person's biometric

6   identified or biometric information. 740 Ill. Comp. Stat. 14/15(b). The Parties continue to

7   disagree about whether an entity must take an "active step" to collect, capture or otherwise

8   obtain biometric information before triggering the requirements of Section 15(b) (*compare* Dkt.

9   No. 93 at 8, *with* Dkt. No. 98 at 11), and the R&R held that an active step was required. Dkt.

10   No. 87 at 10.

11         Defendants assert that the FAC does not assert any active step. According to Defendants,

12   the FAC merely states that when a user wanted to play NBA2K online, ▮▮▮▮▮▮▮▮▮▮▮

13   ▮▮▮▮▮  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14   ▮▮▮▮  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15   ▮▮▮▮▮▮▮▮▮  Dkt. No. 93 at 9 (citations omitted). Even if an active step is required,

16   however, for the reasons stated in the prior section, the Court agrees with the conclusion in the

17   R&R that to keep Plaintiff's biometric data after the games ended, Defendants "necessarily first

18   had to [take steps to] obtain the data." Dkt. No. 87 at 11 (internal quotation omitted) (quoting

19   *Figueroa v. Kronos*, 454 F. Supp. 3d 772, 784 (N.D. Ill. 2020)).

20         Relying on *Zellmer v. Facebook*, No. C18-1880, 2022 WL 976981 (N.D. Cal. Mar. 31,

21   2022), Defendants also assert that BIPA does not apply where a cloud service provider has no

22   feasible means of identifying and contacting those whose biometric information was collected

23   and stored in the cloud. Dkt. No. 93 at 14. The district court in *Zellmer* held "it would be patently

24   unreasonable to construe BIPA to mean that Facebook was required to provide notice to, and

1   obtain consent from, non-users who were for all practical purposes total strangers to Facebook,

2   and with whom Facebook had no relationship whatsoever." 2022 WL 976981, at *3. However,

3   the Ninth Circuit rejected this reading of BIPA, finding that "the plain text applies to everyone

4   whose biometric identifies or information is held by Facebook." *Zellner v. Meta Platforms, Inc.*,

5   104 F.4th 1117, 1122 (9th Cir. 2024). In particular, the Ninth Circuit noted that Section 15(b)

6   delineates between persons and customers, showing that non-users are protected "regardless of

7   any preexisting relationship with the party alleged to have violated BIPA." *Id.* And Defendants'

8   claim that compliance would be impossible also seems exaggerated. *See* Dkt. No. 93 at 14. As

9   Plaintiff points out, Defendants already make BIPA disclosures and obtain consent prior to

10  collecting biometric data from the end-users of some of its other customers, requiring those

11  customers to disclose Amazon's involvement in the collection, use, or storage of biometric data

12  and obtain BIPA consents and releases on its behalf. *See* Dkt. No. 72 ¶ 171; Dkt. No. 81 at 26;

13  Dkt. No. 98 at 17.

14  **B.    The Communications Decency Act**

15       Section 230(c) of the CDA provides immunity to a provider of an interactive computer

16  service that a plaintiff seeks to treat as a publisher or speaker of information provided by another

17  information content provider. 47 U.S.C. § 230(c)(1); *see also id.* § 230(e)(3). Defendants'

18  objection claims the R&R "incorrectly concludes that the CDA is inapplicable because

19  'Plaintiff's BIPA claims do not treat Amazon's conduct as publishing,' but rather create a legally

20  distinct duty under BIPA." Dkt. No. 93 at 13. In particular, Defendants state that Plaintiff's

21  claims are premised on Defendants purportedly obtaining and dissemination (or publishing)

22  Plaintiff's data to third parties and that, at a minimum, the Section 15(d) claim is barred. *Id.*

23       While all the claims involve dissemination of information, the heart of the BIPA claim is

24  that Defendants failed to obtain consent *before* any such dissemination of information. As

pointed out in the R&R, this is a legally distinct duty that "do[es] not derive from or even require publishing—[the duty] arise[s] from Defendants' alleged possession, use, *and/or* dissemination of biometric data without notice or consent." Dkt. No. 87 at 12 (emphasis added) (citing *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, No. C22-3047, 2023 WL 7524912, at *17 (N.D. Cal. Nov. 14, 2023) ("The claim alleges defendants failed to provide required notice and obtain parental consent before collecting certain information from children. That in no way impacts their role as publishers of third-party content."). In short, collection or possession alone, without dissemination, can trigger the BIPA duty.

## IV.    CONCLUSION

Accordingly, it is hereby ORDERED:

(1)    The Report and Recommendation (Dkt. No. 87) is ADOPTED.

(2)    Defendants Amazon Web Services and Amazon.com Inc's objections (Dkt. No. 93) are OVERRULED.

(3)    The Clerk is DIRECTED to send a copy of this Order to counsel and to Judge Peterson.

(4)    The Parties SHALL meet and confer to determine whether any portions of this Order should be redacted. If so, the Parties SHALL file a redacted version **within seven (7) days** of this Order.

(5)    The Clerk SHALL maintain this Order under seal pending further rulings from this Court.

Dated this 5th day of November 2024.

Tana Lin
United States District Judge